

1  Noah Kanter  (SBN 224580) ·
   John F. Henning III (SBN 188416)
2  Lawrence D. Murray (SBN 077536)
   MURRAY & ASSOCIATES
3  1781 Union Street
   San Francisco, CA  94123
4
   Tel:    (415) 673-0555
5  Fax:    (415) 928-4084
6  Attorneys for Plaintiffs

**FILED**

**JUL 1 3 2007**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

7
8                **UNITED STATES DISTRICT COURT**
9                   **Northern District of California**

**BZ**

10  MERCY AMBAT, ZAINABU ANDERSON,
11  JOHN ARITA, DENNIS CARTER, SHARON
    CASTILLO, JOANNA CROTTY, TEQUISHA
12  CURLEY, ALISA DAVIS-ZEHNER, MARLA
    DENZER, , PATTI FLYNN, TERESA FOX, JON
13  GRAY, TORI JACKSON, LISA JANSSEN,
14  MICHAEL JONES, RICHARD LEE, SANDRA
    MACLIN-GIBSON, SUKHWANT MANN,
15  GLORIA MARTIN, ARTURO MEDRANO,
16  MARC NUTI, KEVIN O'SHEA, ANTHONY
    PEPPERS, VINCENT QUOCK, WENDY
17  RODGERS-WELLS,  LANA SLOCUM, ERNEST
    SMITH, TONYETTE SMITH-AL GHANI,
18  MATTIE SPIRES-MORGAN, KENNETH TAN,
19  ANJIE VERSHER, BONNIE WESTLIN,
    YVETTE WILLIAMS, ROLAND ZANIE, and
20  MICHAEL ZEHNER,

21              Plaintiffs,
22          vs.

23  CITY AND COUNTY OF SAN FRANCISCO,
24  THOMAS ARATA, STEPHEN TILTON,
    RODERICK WALLACE, JOHN MINOR,
25  EDWARD RUPPENSTEIN, JOHNA PECOT,

26              Defendants.
27
28

**C 07    3622**

No.

**COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF**
1)  Gender Discrimination, Title VII
2)  Gender Discrimination, FEHA
3)  Gender Employment Restriction Title VII
4)  Gender Employment Restriction, FEHA
5)  Retaliation for Protected Activity, Title VII
6)  Retaliation for Protected Activity, FEHA
7)  Failure To Prevent Violation of FEHA
8)  California Labor Code § 1102.5 et seq
9)  Peace Officer Bill of Rights (Govt § 3309.5)

**JURY TRIAL DEMANDED**

*Ambat et al. v. CCSF et al.*       United States District Court, Northern District of California    Page 1
Complaint for Damages & Injunctive Relief

1    Plaintiffs MERCY AMBAT, ZAINABU ANDERSON, JOHN ARITA, DENNIS CARTER,

2    SHARON CASTILLO, JOANNA CROTTY, TEQUISHA CURLEY, ALISA DAVIS-ZEHNER,

3    MARLA DENZER, PATTI FLYNN, TERESA FOX, JON GRAY, TORI JACKSON, LISA JANSSEN,

4    MICHAEL JONES, RICHARD LEE, SANDRA MACLIN-GIBSON, SUKHWANT MANN, GLORIA

5    MARTIN, ARTURO MEDRANO, MARC NUTI, KEVIN O'SHEA, ANTHONY PEPPERS,

6    VINCENT QUOCK, WENDY RODGERS-WELLS, LANA SLOCUM, ERNEST SMITH,

7    TONYETTE SMITH-AL GHANI, MATTIE SPIRES-MORGAN, KENNETH TAN, ANJIE VERSHER,

8    BONNIE WESTLIN, YVETTE WILLIAMS, ROLAND ZANIE, MICHAEL ZEHNER, and complain of

9    Defendants CITY AND COUNTY OF SAN FRANCISCO, THOMAS ARATA, STEPHEN TILTON,

     RODERICK WALLACE, JOHN MINOR, EDWARD RUPPENSTEIN, JOHNA PECOT, and allege:

10

11                        **FACTS COMMON TO ALL CAUSES OF ACTION**

12   **A.    Jurisdiction and Venue**

13   1.    Jurisdiction of matters claimed herein is properly before the United States District Court,

14   Northern District of California pursuant to 28 USC 1331. Jurisdiction of all California claims is proper

15   pursuant to this court's Supplemental Jurisdiction, specifically, 28 USC 1367(a).

16   2.    Venue of all matters claimed herein is properly before the United States District Court for the

     Northern District of California as each of the acts alleged occurred within this district.
17

     3.    Pursuant to United States District Court, Northern District of California, Local Rule 3-2(d), this
18
     action is being commenced in San Francisco, California, because the facts and circumstances of this
19
     action arose in San Francisco County, California.
20

21   **B.    Identity of Plaintiff**

22   4.    Plaintiffs MERCY AMBAT, ZAINABU ANDERSON, JOHN ARITA, DENNIS CARTER,

23   SHARON CASTILLO, JOANNA CROTTY, TEQUISHA CURLEY, ALISA DAVIS-ZEHNER,

24   MARLA DENZER, PATTI FLYNN, TERESA FOX, JON GRAY, TORI JACKSON, LISA JANSSEN,

25   MICHAEL JONES, RICHARD LEE, SANDRA MACLIN-GIBSON, SUKHWANT MANN, GLORIA

26   MARTIN, ARTURO MEDRANO, MARC NUTI, KEVIN O'SHEA, ANTHONY PEPPERS,

27   VINCENT QUOCK, WENDY RODGERS-WELLS, LANA SLOCUM, ERNEST SMITH,

28   TONYETTE SMITH-AL GHANI, MATTIE SPIRES-MORGAN, KENNETH TAN, ANJIE VERSHER,

BONNIE WESTLIN, YVETTE WILLIAMS, ROLAND ZANIE, and MICHAEL ZEHNER, are Citizens of the United States and residents of the territorial jurisdiction of this court. Specifically, the City and County of San Francisco and the State of California. At all times relevant plaintiffs were employees of Defendant CITY AND COUNTY OF SAN FRANCISCO.

5.     At all times relevant plaintiffs were employed in the City of San Francisco, County of San Francisco, State of California, and were discriminated against in that location.

## C.     Identity of Defendants

6.     Defendant CITY AND COUNTY OF SAN FRANCISCO is a public entity operating and doing business in the City and County of San Francisco, State of California. At all relevant times, Defendant CITY AND COUNTY OF SAN FRANCISCO, was and is an employer within the definition of employer as defined for the purposes of discrimination under Title VII and the Fair Employment and Housing Act Government Code §§12900, *et seq.*, (herein referred to as "FEHA") in that said defendant employed more than twenty thousand employees, more than the minimum number of persons in the State of California to be classified as an employer under Title VII and FEHA.

7.     Defendant THOMAS ARATA (here "Arata") was and is, at all times relevant, a manager and supervisor of the Defendant CITY AND COUNTY OF SAN FRANCISCO, with the power to hire, impose discipline, promote, assign work and give directives within said public entity. He is a Citizen of the United States and a resident of the territorial jurisdiction of this court, specifically, the City and County of San Francisco and the State of California.

8.     Defendant LIEUTENANT STEPHEN TILTON (here "Tilton") was and is, at all times relevant, a Citizen of the United States and a resident of the territorial jurisdiction of this court, specifically, the City and County of San Francisco and the State of California.

9.     Defendant SERGEANT RODERICK WALLACE (here "Wallace") was and is, at all times relevant, a Citizen of the United States and a resident of the territorial jurisdiction of this court, specifically, the City and County of San Francisco and the State of California.

10.     Defendant LIEUTENANT JOHN MINOR (here "Minor") was and is, at all times relevant, a Citizen of the United States and a resident of the territorial jurisdiction of this court, specifically, the City and County of San Francisco and the State of California.

11.     Defendant SERGEANT EDWARD RUPPENSTEIN (here "Ruppensein") was and is, at all times

1  relevant, a Citizen of the United States and a resident of the territorial jurisdiction of this court,
2  specifically, the City and County of San Francisco and the State of California.

3  12.     Defendant CAPTAIN JOHNA PECOT (here "Pecot") was and is, at all times relevant, a Citizen
4  of the United States and a resident of the territorial jurisdiction of this court, specifically, the City and
5  County of San Francisco and the State of California.

6  13.     At all times mentioned herein, each defendant was, in doing the things alleged, the agent and
   employee of each other defendant, acting within the course and scope of such agency /employment, and
7  acting with the knowledge, consent, and authorization of each of the remaining defendants.

8  14.     All actions of each defendant herein alleged were ratified and approved by the officers or
9  managing agents of each other defendant.

10  15.     At all relevant times, Defendant CITY AND COUNTY OF SAN FRANCISCO, was and is an
11  employer within the definition of employer as defined for the purposes of discrimination under The Civil
12  Rights Act of 1964, (42 USC 2000e) and the Fair Employment and Housing Act, California Government
13  Code §§12900, *et seq.*, (herein referred to as "FEHA") in that said defendant employed more than fifteen
14  employees, more than the minimum number of persons in the State of California to be classified as an
15  employer under Title VII and FEHA.

16  16.     That the conditions of employment occurred to the plaintiffs listed herein. As said complaint has
    been raised, defendants, and each of them, have chosen to instruct the victims of said discrimination,
17  including the plaintiffs here, to move to another job or get another job rather than carry out there
18  statutory duty to eliminate all forms of illegal discrimination. The changing of positions of these
19  plaintiffs, to the extent that such change has occurred, has not reduced the incidents of discrimination but
20  rather, has necessarily caused the harm of such discrimination to be felt by additional and new victims of
21  such discriminatory conduct.

22  17.     At all times relevant, Defendant City and County of San Francisco was prohibited from using
23  gender as a basis for discrimination in the assignment of work in the jail by the laws of the State of
24  California in California Penal Code Section 4021(b) which states: "It shall be unlawful for any ... jailer
25  ... to search the person of any prisoner of the opposite sex, except in the company of an employee of the
26  same sex as the prisoner. Except as provided herein, the provisions of this subdivision shall not be
27  applied to discriminate against any employee by prohibiting appointment or work assignment of the
    basis of the sex of the employee.
28

*Ambat et al. v. CCSF et al.*     United States District Court, Northern District of California   Page 4
Complaint for Damages & Injunctive Relief

**D.    History Giving Rise To Suit**

(i)    **Discrimination In Employment Against Female Deputies By Defendants**

18.    MERCY AMBAT, ZAINABU ANDERSON, SHARON CASTILLO, JOANNA CROTTY, TEQUISHA CURLEY, ALISA DAVIS-ZEHNER, MARLA DENZER, PATTI FLYNN, TERESA FOX, TORI JACKSON, LISA JANSSEN, SANDRA MACLIN-GIBSON, GLORIA MARTIN, WENDY RODGERS-WELLS, LANA SLOCUM, TONYETTE SMITH-AL GHANI, MATTIE SPIRES-MORGAN, ANJIE VERSHER, BONNIE WESTLIN, and YVETTE WILLIAMS were treated less favorably because of their gender, female.

19.    On or about October 4, 2006, all female inmates were collected from other sections of the San Francisco County Jail system and then moved to and reassigned to all inclusive sections unattainable by other sections, (known as "pods") in the San Francisco County Jail, specifically County Jail # 8, ("CJ#8").

20.    Assignment of deputies in CJ#8 was realigned so that the female pods in CJ#8 housed only female prisoners which were staffed by only female deputies. On multiple occasions, letters and grievances were directed to the supervisors in charge, including Sheriff Hennessey, notifying them of the discriminatory assignment of only female deputies to the female pods of CJ#8 (see below). The Sheriff's Department past practice had been that the primary deputy be female while the backup can be male. This practice was inconsistent with and in excess of the authorization for gender consideration found in the California Penal Code 4021 which states that a female deputy must be available and accessible for female inmates at all times, not that only female deputies can be assigned to female pods. Penal Code Section 4021 specifically prohibits gender based discriminatory work assignments in said female pods and elsewhere in the jail system.

21.    Notably, in most, if not all federally operated and California state prisons, men and women have consistently staffed both the male and female pods and jail facilities without regard to gender of the staff or of the prisoner. There is no practice in the federal and California state prison and jail system that excludes males from working in jails and prisons which house women.

22.    However, in the San Francisco County Jail system, effective October 4, 2006, the City and County of San Francisco, by and through the Sheriff's Department, instituted a new policy of consolidating and housing all female inmates in one area, County Jail # 8, ("CJ#8"), more particularly in three sections of the jail, commonly referred to as "pods," and using only female deputies to staff these

1 | three female pods,

2 | 23. By written directive of October 18, 2007, from Defendant Chief Arata to all of the jails, those
3 | female deputies previously assigned to other jails, specifically County Jail 1 and 2, were reassigned to
4 | CJ#8.

5 | 24. The assignment of female deputies, including the female plaintiff employees, causes harm to
6 | such female employees over and above the harm encountered by male deputies. Female deputies
7 | working female only pods are constantly and continually put at a great risk of harm above and beyond
that experienced by male deputies who do not work the female side of the jail.

8 | 25. In the San Francisco jails and elsewhere, female inmates are more difficult to supervise than male
9 | inmates. Female inmates require more attention, are more disruptive and tend to be more violent
10 | towards each other and these deputies, and are allowed access to more dangerous items as compared to
11 | male inmates.

12 | 26. Female deputies assigned to and supervising female inmate pods are exposed to increased risk of
13 | physical harm since they work alone for periods of time (lunch, dinner, breaks, midnight shift) which
14 | increases the risk of harm to these female deputies. Male and female deputies supervising male inmates
15 | generally have at least two deputies per male inmate pod. When dealing with male prisoners in male
16 | pods, during meal breaks a supervisor will fill in to maintain the two deputy minimum.

17 | 27. The female pods are generally designated for specific numbers of prisoners per pod. However,
due to overcrowding and the lack of space and bedding, the female pods of CJ#8 are often overcrowded
18 | beyond their capacity. For example, in May, June and July 2007, there were many instances of
19 | overcrowding by as much as 20 inmates in excess of the 86 capacity for the female pod which far
20 | exceeded the available bed space. The male pods do not suffer from excessive numbers of inmates as
21 | they are generally shipped to other jails when they arrive and no bed space is available. This condition,
22 | and the limited number of female deputies, increases the risk of harm, the risk that one or two female
23 | deputies would be hurt or killed in the situation, and increases the stress on female deputies beyond
24 | those suffered by male deputies. Inmates have a history of attacking other inmates and harming the
25 | inmates, such as attacks with hot scalding water causing second degree burns, where, in this setting
26 | there is overcrowding and a lack of female deputies to supervise the situation safely.

27 | 28. Further, overcrowding is exacerbated by a policy in which inmates confined by reason of Parol
Revocation and pending Parol Hearings are given priority and space in CJ#8. San Francisco County

28 |

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 6
Complaint for Damages & Injunctive Relief

1  Jails receive funds from the Department of Corrections, State of California, for housing Parolees
2  awaiting hearings. San Francisco County female inmates are forced to sleep on the floor having their bed
3  reassigned to the Parol inmate. Female deputies are thus forced to quell the fights and hostility created
4  by this situation which is rarely encountered in the male only pods.

5  29.  In the female pods, lights are not kept on 24 hours a day as is the case with most male pods (e.g.
6  F Pod). This increases the chance of danger to the sole female deputy watching over the inmates as she
7  cannot see where potential conflicts may arise, and is unequipped to handle any conflicts if they arise
   due to a lack of personnel, especially when compared to her counterpart working the male pods.

8  30.  Due to the policy of female only deputies in female pods, female deputies are often assigned a
9  transfer and detailed to these female pods without training and without understanding of the security
10  procedures for the operation of their position. Assignment without training places all of the employees,
11  inmates and deputies at greater risk of injury and places the security of the jail at higher risk.

12  31.  The female population at CJ#8 is more dangerous than the population in the all male sections.
13  Female pods have all of the female population, including those who are unusually violent and dangerous,
14  randomly placed in the pod without regard to classification for security purposes, including their history
15  and level of danger. Female pods have those who are emotionally distressed and dangers to themselves
16  mixed in with normal prisoners. Female pods have those who are classified as, and have an extensive
17  history of violence, mixed in with the general female population, (e.g. MR3's and MR4's). The male
18  pods do not have such mixture of the various levels of dangerous prisoners. The male pods have the
   dangerous prisoners segregated out and placed in special cells with extra deputies assigned to handle
19  those dangerous male prisoners.

20  32.  The female pods for female prisoners have no equipment or facilities to safely handle those who
21  are dangerous, while male cells do have special means for handling dangerous prisoners. Male pods have
22  special doors and equipment to have the prisoner in leg and body chains before exiting the cell to
23  preclude an attack on the deputy. No such equipment or facilities is in place to handle the female
24  prisoners, thus allowing more frequent violent attacks against the female deputies in the female pods.

25  33.  Female deputies who are assigned to these female pods have to perform substantial
26  administrative work, such as passing out medication, delivery of food and replacement clothing, which
27  takes there attention off of the other members of the pods and increases the level of safety risk for the
28  deputy. The male cells rarely have less than two deputies working and adjust for such a shift in the

*Ambat et al. v. CCSF et al.*      United States District Court, Northern District of California    Page 7
Complaint for Damages & Injunctive Relief

1    deputy staffing.

2    34.    Female deputies who are assigned to these female pods fail to get training in many other security
3    positions and fail to get adequate use of the facility to operate it in a safe manner. In order to give the
4    appearance of complying with internal orders and California jail management standards, management,
5    including defendants here, have knowingly and intentionally created false and misleading documentation
6    to demonstrate that certain female deputies assigned to female pods have been trained and certified as
     competent to work other jail assignments when no such training and no such certification has occurred.
7    35.    Female deputies who are assigned to these female pods fail to have the opportunity to function
8    in other positions, thus limiting their ability to compete for promotion when compared to others who
9    work in and function in numerous other positions.

10   36.    Male deputies assigned to CJ#8 and similar jails enjoy a variety of assignments which relieve and
11   reduce fatigue and stress. Female deputies who are assigned to these female pods do not enjoy a variety
12   of assignments, have increased fatigue from this singular assignment, and have exacerbation of this
13   condition by repeatedly being forced to work additional shifts in these pods while in a fatigued state,
14   thereby additionally increasing their own risk of physical harm from female inmates.

15   37.    Female deputies who are assigned to these female pods have their choice of other benefits of
16   employment such as shift, regular days off (RDOs) and vacation schedule limited because their seniority
     is no longer the determining factor for receiving such benefits.
17

18
          (ii)    **Discrimination In Employment Against Male Deputies By Defendants**
19   38.    JOHN ARITA, DENNIS CARTER, JON GRAY, MICHAEL JONES, RICHARD LEE,
20   SUKHWANT MANN, ARTURO MEDRANO, MARC NUTI, KEVIN O'SHEA, ANTHONY
21   PEPPERS, VINCENT QUOCK, ERNEST SMITH, KENNETH TAN, ROLAND ZANIE, and
22   MICHAEL ZEHNER, have been treated less favorably because of gender, male.

23   39.    Since the segregation and movement of all the female inmates into one section on or about
24   October 4, 2006, the Department also implemented a shift bidding process for RDOs and shift
25   assignment that is segregated by gender. Instead of having RDOs and shift assignment based on
26   seniority, as has been the practice for years and is required under the collective bargaining agreement, it
27   has been based on gender first since October 2006. This has resulted in some of the more senior male
28   deputies having to take less favorable RDOs and shift assignments than would be the case if it were

---

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 8
Complaint for Damages & Injunctive Relief

1  based on seniority. When, in 1994-5, defendant attempted such gender based discrimination,
2  complaints were raised and the department relented, admitting it was unlawful gender based
3  discrimination.

4  40.    When it is necessary to recruit deputies for overtime in the female pods of CJ#8, it is posted in
5  writing by the San Francisco Sheriff's Department as overtime available to "female only," effectively
6  eliminating and discouraging any male deputies from signing up for overtime in CJ#8. On rare
   occasions when only a male deputy can be found to fill the shift, he is then placed in overtime status and
7  traded to another facility for a female who then is assigned to work CJ#8. This puts both deputies at
8  increased risk of physical harm in a facility with which he/she is not familiar and an increasedrisk of
9  discipline for having made erroneous decisions in the booking, handling and release of prisoners in their
10 custody.

11 41.    By the policy since October 2006, male deputies are discriminated against based on their gender
12 in their ability to work overtime and earn the wages from those hours. Overtime signups are supposed to
13 be based on seniority, with more senior deputies getting preference for available overtime. However,
14 due to the practice of staffing only female deputies in the female pods of CJ#8, less senior female
15 deputies are given opportunity for overtime that would otherwise be given to more senior male deputies.
16 Thus, male deputies who are seeking overtime work, who are ready, willing and able to work, have been
17 deprived work and therefore deprived income, as a result of this policy of having only female deputies
   assigned to work the female only pods of the San Francisco County Jail.

18 42.    The San Francisco Sheriff's Department has a rule, policy and procedure which precludes and/or
19 makes it very difficult for those who complain of gender based discrimination to do so without violating
20 rules, being brought up on disciplinary charges and otherwise being harmed for complaining of illegal
21 forms of discrimination, including gender based discrimination in employment.

22

23         (iii) **Retaliation against Lisa Janssen by Defendants**

24 43.    Plaintiff Deputy Lisa Janssen was retaliated against due to complaining of gender discrimination
25 in the San Francisco County Jails. Plaintiff Deputy Janssen complained about gender based assignments
26 and as a result was classified as insubordinate and sustained a written punishment. On or about January
27 9, 2007, Deputy Janssen was detailed from her normal assignment to the female pods in CJ#8 by her
28 watch commander for her normal watch. Plaintiff Deputy Janssen contacted and complained of such an

assignment as gender based discrimination to Defendant Lieutenant Stephen Tilton.    Within days the complaint of gender discrimination was acknowledged and made by Tilton the basis for an adverse employment action by Tilton against Plaintiff Deputy Janssen.  As a result, Plaintiff Deputy Janssen was then called into a Chief's investigation for a Chief's reprimand to which Plaintiff Deputy Janssen provided a written response.  During the hearing before Defendant Chief Thomas Arata, Plaintiff Deputy Janssen again complained that the policy was illegal and an act of gender based discrimination.   During the hearing Arata and Tilton stated that Plaintiff Deputy Janssen, and all deputies, are not allowed to question or complain about orders even if the orders are discriminatory.

44.    Plaintiff Deputy Janssen did as instructed on the day in question and worked without incident in the female pod at CJ#8.  Plaintiff Deputy Janssen was then brought up on charges of (a) conduct towards superior officers and peers, (b) criticism of orders, (c) impermissible behavior, and (d) unacceptable job performance, all for having complained to her supervisor that such assignment to CJ#8 during her normal work shift at CJ#1, which was based on her gender, female, was illegal discrimination by the Sheriff's Department.

45.    Because of the complaint of discrimination, Defendants Arata and Tilton used that opportunity as the basis for imposition of a Chief's Reprimand, a form of written discipline which follows her throughout her employment career, which will hamper this deputy from advancing to other and higher positions of authority in the department.  This deputy has a history of annual reviews where she has been rated as "exceeds expectations."  This is the first time that Plaintiff Deputy Janssen has had any written disciplinary action against her.

46.    In a formal meeting with Defendant Chief Thomas Arata, during the course of an investigation by the managers of the Sheriff's Department, Defendant Lieutenant Stephen Tilton indicated that plaintiff complained of gender discrimination in assignment of wages, hours and working conditions and did so in a loud and unruly manner.  He did so in an effort to cause Plaintiff Deputy Janssen to sustain a potential future discipline and potential loss of employment for having complained of illegal gender discrimination.  This deputy denied using a loud and boisterous manner and admitted that her complaint was based on illegal gender discrimination in assignment of work.

47.    In order to perpetuate the illegal policy of discrimination, further damage and harm plaintiff, and to cause a chilling effect upon Plaintiff Janssen and any other deputy who might complain of discrimination, Defendant Roderick Wallace, employed deceit and fraud in that he stated that he heard

1  Janssen talk in a loud voice, thus act insubordinately, when in fact he was not in a position to have heard
2  anything. Defendant Wallace stated that he heard Plaintiff Deputy Janssen in that she was emotional and
3  irrational and that he could hear her voice over the phone in the conversation with Lieutenant Tilton
4  though he was not in a position to have heard any of the conversation.   The statements of Defendant
5  Roderick Wallace were knowingly false, malicious and intended to perpetuate the ongoing acts of
6  discrimination and preclude anyone, including Plaintiff Jansen, from presenting or formulating
7  complaints of gender discrimination in employment, all consistent with the policy, practice and
   procedure of the San Francisco Sheriff's Department.

8  48.    As a result of having the charges brought and theses statements made, Plaintiff Deputy Janssen
9  requested that an investigation include questioning of others who were present on her side of the phone
10  call as well as Defendant Tilton's side of the phone call. Plaintiff Janssen indicated that there were
11  witnesses who would be willing to speak of their observations that no such hostile, emotional or
12  irrational comments were made. Rather than carry out the function of the investigation, including the
13  mandatory duty to take all reasonable steps to end discrimination, Defendant Thomas Arata stated he had
14  no interest in calling others or doing any further investigation and that if the deputy wanted to get other
15  witnesses she should but that he had heard all that he needed to hear.

16  49.    In an effort to prevent any future complaints of discrimination, the disciplinary order issued by
17  Defendant Thomas Arata stated that Plaintiff Deputy Janssen would be placed on progressive discipline
18  leading to termination if she was to again complain of orders issued to her, including complaining of
19  gender based discrimination in assignment of employment duties in the San Francisco County Jail
   System.

20  50.    On or about April 5, 2007, Plaintiff Deputy Janssen, through her attorneys, filed a California
21  Government Code Claim entitled "Claim for Monetary Damages Per Section 910, et seq, Government
22  Code," with the City and County of San Francisco naming Defendants Lt. Stephen Tilton, Capt. Thomas
23  Arata, and Sgt. R. Wallace. On or about April 23, 2007, the City and County of San Francisco rejected
24  said claim and thereafter started a 6 month statute of limitations for bringing a claim.

25  51.    On or about April 20, 2007, Plaintiff Deputy Janssen, through her attorneys, requested charges
26  by the State of California, Department of Labor, Labor & Workforce Development Agency, against City
27  and County of San Francisco, Sheriff's Office, Lt. Stephen Tilton, Capt. Thomas Arata, and Sgt. R.
28  Wallace pursuant to the provisions of Labor Code Section 2699 and 2699.3  More than 33 days have

*Ambat et al. v. CCSF et al.*        United States District Court, Northern District of California    Page 11
Complaint for Damages & Injunctive Relief

1   expired since the request for such charges was made, hence Plaintiff Janssen has exercised all of her
2   administrative prerequisite to bringing claims under 1102.5 of the California Labor Code.

### (iv)   Retaliation against Mattie Spires-Morgan

52.   Plaintiff Mattie Spires-Morgan was retaliated against due to complaining of harm done to her and other female deputies due to gender discrimination in the San Francisco County Jails by the female deputy only policy for female pods. She suffered unlawful and baseless charges for events that did not occur in an effort to retaliate for having complained of discrimination and in an effort to preclude and cause a chilling effect on future claims of gender based discrimination.

53.   For months since the assignment of female only deputies into the female only pods at CJ#8, Plaintiff Mattie Spires-Morgan made verbal complaints that women were more at risk for working these female only pods. She verbally complained that safety of female deputies was at higher risk than for males outside the female only pod.

54.   At the end of January 2007, and again in the beginning of February 2007, while at "muster" (a mandatory all deputy meeting lead by Sheriff's Department managers at the beginning of the shift to make assignments and discuss the condition of the jail), when asked if anyone had anything to say, Plaintiff Mattie Spires-Morgan complained to the manager, Defendant Lt. John Minor, about the policy for female only deputies in the female pods. She complained that the method and means of causing women only to work these pods, as described here, is unsafe for the deputies. At two different musters she complained that the method of staffing these pods with only women was unsafe and that she or another deputy would likely get hurt from the policy. Defendant Lt. Minor laughed at the complaint stating that nothing was going to happen unless one of them (one of the female deputies) got hurt and then maybe something would be done.

55.   As a direct result of the heightened level of safety concerns and because her supervisors would do nothing more than laugh at her complaints of gender based discrimination in front of approximately twelve (12) other deputies, on February 25, 2007, Plaintiff Mattie Spires-Morgan drafted a written grievance regarding outstanding safety issues in the female pod of CJ#8 due to the gender based discriminatory policy for assignment of female deputies to the female pods, which included short staffing due to the refusal to place available men in the female pots, and lighting differences in the female pods creating an even greater level of danger in the work place. Plaintiff Mattie Spires-Morgan

*Ambat et al. v. CCSF et al.*   United States District Court, Northern District of California   Page 12
Complaint for Damages & Injunctive Relief

also complained in writing of the safety issues created by having only one deputy for the entire pod where that deputy is responsible for providing food and providing the medications, which left no one attentive to the remainder of the pod and the security needs for the remainder of the pod.

56.    Plaintiff Mattie Spires-Morgan placed the grievance in Defendant Captain Johna Pecot's inbox. Contrary to her statutory duty to take all reasonable actions to end discrimination under California Government Code Section 12940 (k), Defendant Pecot refused to take any action on the complaint of discrimination and rejected it without any investigation or discussion with Plaintiff Mattie Spires-Morgan.

57.    As a result of having made a written complaint of gender based discrimination to Defendant Pecot, within 300 days of filing the EEOC charges in this matter on March 28, 2007, Plaintiff Mattie Spires-Morgan was subject to acts of retribution and retaliation by the management staff consisting of Defendants Capt. Johna Pecot, Lt. John Minor and Sgt. Ed Ruppenstein.

58.    On February 28, 2007, Plaintiff Mattie Spires-Morgan was summoned to meet with her supervisors, Defendants Lt. Minor and Sgt. Ruppenstein. At this meeting Minor and Ruppenstein acknowledged the discriminatory nature of the policy but refused to alter the female deputy only policy in the female pods at CJ#8.

59.    Immediately after making the grievance, and as a result of having filed the grievance, an internal affairs action was begun against Plaintiff Mattie Spires-Morgan, which, upon information and belief was controlled, authorized and approved by Defendants Capt. Johna Pecot, Lt. Minor and Sgt. Ruppenstein.

60.    Contrary to established protocol, Plaintiff Mattie Spires-Morgan was not notified that she was the subject of an investigation at the inception of the investigation. Plaintiff was actually informed by the jail inmates that her supervisors were actively soliciting complaints of misconduct from these inmates against Plaintiff Mattie Spires-Morgan. Contrary to established protocol, after her supervisors began soliciting complaints, plaintiff was not told that she was being investigated for misconduct. Plaintiff was not informed by a supervisor that they were conducting an investigation, the nature of the investigation or the basis for the investigation.

61.    The Memorandum of Understanding between the Sheriff's Department and the Union requires that a deputy must be informed of any such investigation. Additionally, the procedure employed by said defendants was a violation of this deputy's rights under the California Peace Officer's Procedural Bill of Rights.

62. On March 8, 2007, Plaintiff Mattie Spires-Morgan was approached by Defendant Lt. Minor and she was then ordered to stay over and work an additional eight (8) hours involuntary overtime after finishing her shift. When no deputy had been sent to relieve her following this 16 hour work period, Plaintiff Mattie Spires-Morgan notified Defendant Sgt. Wallace that she needed to be relieved since she had worked at least 16 hours. After prodding by plaintiff, Sgt. Wallace relieved her at 3:15 p.m. Plaintiff Mattie Spires-Morgan complained to Sgt. Wallace that she thought it was intentional that no relief had been sent until she complained. Defendant Sgt. Wallace just laughed at her. The Sheriff's Department Policy and the MOU states that no deputy can work more than 16 hours unless there is a natural disaster.

63. On March 9, 2007, Plaintiff Mattie Spires-Morgan finally received the inmate grievances from Defendants Lt. Minor and Sgt. Ruppenstein which they had previously solicited and which were submitted to them on February 23rd. It is common practice for supervisors to find out from the deputy whether the allegations are true and if there were any other witnesses. However, in this case, they made no inquiry, sought no information, and slid the grievances across the table. Both told her to respond to the grievances. This was the first time she was shown grievances (15 days after they had been filed).

64. On March 23, 2007, Dave Gossman (the union representative for Plaintiff Mattie Spires-Morgan) addressed a letter to Sheriff Hennessey in an attempt to find a remedy for the original grievance filed by Plaintiff Mattie Spires-Morgan.

65. On March 23, 2007, Plaintiff Mattie Spires-Morgan was again ordered to work an additional shift of 8 hours of involuntary overtime despite the fact that she was not next on the draft list. Plaintiff Mattie Spires-Morgan had other deputies ahead of her on the draft list. There was no reason for deviating from the draft list. It is utilized specifically so that deputies are drafted equally and in the proper order. However, the rules relating to rotation of forced overtime were overlooked in order to cause inconvenience to and continue to inflict harm against Plaintiff Mattie Spires-Morgan; to intimidate her regarding the grievance drafted on February 25th; and to intimidate her from filing future grievances which were based on gender discrimination.

66. On April 18, 2007, Plaintiff Mattie Spires-Morgan was informed she was under investigation for charges that she permitted a fight in the female pod and other things. Plaintiff Mattie Spires-Morgan was forced to and did undergo an interview in association with these charges. Ultimately, these charges were dismissed since there was never a fight. Such charges were brought with intent to chill the exercise

*Ambat et al. v. CCSF et al.* United States District Court, Northern District of California Page 14
Complaint for Damages & Injunctive Relief

1 | of her rights to complain of gender based discrimination.

2 | 67.    These charges were made in retaliation after she complained of a dangerous and discriminatory
3 | work environment and after she consulted with a lawyer to protect her interests.

4 | 68.    On or about April 5, 2007, Plaintiff Deputy Spires-Morgan, through her attorneys, filed a
5 | California Government Code Claim entitled "Claim for Monetary Damages Per Section 910, et seq,
6 | Government Code," with the City and County of San Francisco naming Defendants Lt. Stephen Tilton,
7 | Capt. Thomas Arata, and Sgt. R. Wallace. On or about April 23, 2007, the City and County of San
   | Francisco rejected said claim and thereafter started a 6 month statute of limitations for bringing a claim.
8 | 69.    On or about April 20, 2007, Plaintiff Deputy Spires-Morgan, through her attorneys, requested
9 | charges by the State of California, Department of Labor, Labor & Workforce Development Agency,
10 | against City and County of San Francisco, Sheriff's Office, Lt. Stephen Tilton, Capt. Thomas Arata, and
11 | Sgt. R. Wallace pursuant to the provisions of Labor Code Section 2699 and 2699.3 More than 33 days
12 | have expired since the request for such charges was made, hence Plaintiff Mattie Spires-Morgan has
13 | exercised all of her administrative prerequisite to bringing claims under 1102.5 of the California Labor
14 | Code.

15 |
16 |          **(v)     Retaliation against Plaintiff Deputy Anjie Versher**

17 | 70.    In the housing of male deputies, those who pose a substantial risk of harm to themselves, others
   | and the deputy staff are housed in specially equipped cells and housing areas with like individuals where
18 | the staff can apply restraint devices in a manner which is safe for the deputized staff. However, in the
19 | female only pods, where only females are allowed to work, the female inmates who suffer from mental
20 | and emotional challenges (normally subject to "administrative segregation") which create a greater risk
21 | of injury to the deputized staff have no similar housing, no specially equipped cells, no specially created
22 | equipment, and no segregated housing areas where the staff can apply restraint devices in a manner
23 | which is safe for the deputized staff.

24 | 71.    Female deputies who work this area are necessarily incurring greater risk of injury and greater
25 | safety risks than male deputies who are not permitted to work this area.

26 | 72.    Female deputies who complain, such as Anjie Versher, have complained within the 300 days
27 | prior to the filing of their EEOC complaint, and since then, have been counseled, disciplined, and written
28 | up, and suffered other forms of discipline for conduct where the motivation for such discipline by the

*Ambat et al. v. CCSF et al.*          United States District Court, Northern District of California   Page 15
Complaint for Damages & Injunctive Relief

1  defendants has been to cause a chilling effect on the complaints of gender based discrimination of these

2  deputies.

3  73.    Prior to the change in staffing of female only pods at CJ#8, Plaintiff Versher had an outstanding

4  record of service to the San Francisco Sheriff's Department. She was, almost without exception, highly

5  regarded and had an exemplary service record. Her annual reviews were likewise at or above

6  expectations. This changed after she began to complain of gender based discrimination, treatment and

   danger to women in the female only pods of CJ#8.

7
8  74.    With the change in staffing occurring on or about October 4, 2006, Plaintiff Versher began

   shortly thereafter to voice complaints and concerns as to her safety and the safety of other deputies in the

9  daily "muster." For approximately two to three months after the change in October 2006, whereby only

10 women would work CJ#8 female pods, Plaintiff complained to her immediate supervisors, and then

11 moving up the chain of command. She complained of gender based discrimination to Defendants Sgt.

12 Wallace, Lt. Tilton, then to her captain, Defendant Pecot.

13 75.    Since her immediate supervisors refused to talk with her and seek a remedy to the illegal

14 discriminatory conduct and harm caused to plaintiff, towards the end of October 2006, Plaintiff Versher

15 did approach and complain directly to the top manager at her unit, specifically Defendant Chief Thomas

16 Arata, the top level jail commander. After voicing her complaint to him, he dismissed the complaint and

   told her that she failed to follow the chain of command. Plaintiff Versher told him that she had
17
   complained and that she did not trust Defendants Wallace, Tilton and Pecot because they were not
18
   responding to her complaints and were retaliating against her. Defendant Arata told Deputy Versher that
19
   he would talk to Captain Pecot. Nothing further happened and at no time did Captain Pecot approach
20 Plaintiff.

21 76.    In addition to verbal complaints, Plaintiff Versher filed a complaint of gender based

22 discrimination with the Department of Fair Employment and Housing on December 4, 2006. The

23 Department of Fair Employment and Housing issued a right to sue letter to plaintiff in this matter on or

24 about December 13, 2006.

25 77.    In addition to verbal complaints, Plaintiff Versher filed a complaint of gender based

26 discrimination with the Superior Court of California in the City and County of San Francisco on or about

   February 20, 2007.
27
   78.    Female Deputy Versher suffered reprisals and retaliation for having complained of the gender
28

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 16
Complaint for Damages & Injunctive Relief

1 | based discrimination and the harm caused by the gender based discrimination.

2 | 79.    As a result of repeated complaints, and while her work performance had not been altered or been
3 | deficient, on or about December 23, 2006, Plaintiff was given an undeserving negative performance
4 | evaluation.

(a) for having gone to complain to Chief Arata and not accepting the form of discrimination without complaints, the review stated, "When given constructive criticism at times, Deputy Versher argues the point" … and "At times, Deputy Versher has not followed the proper chain of command. Deputy Versher will seek answers or results to her issues from various supervisors, circumventing the chain of command."

(b) As to her communication problems, as it relates to her communication with her superiors and coworkers, her review states, "Deputy Versher effectively communicates with the inmate population; however she has issues communicating her work related concerns with her fellow deputies. Deputy Versher appears at times to be too forceful and has a problem communicating her message."

(c) Further the review chastises Plaintiff Versher for her complaints that because she is not a team player and does not see the benefit of such gender based discrimination to the employer, she is occasionally uncooperative and needs to improve her ability to take direction.

(d) When Plaintiff Versher challenged Lt. Bruno and asked the basis for these undeserving scores and comments, especially since Lt. Bruno had not been in a position to have observed most of the conduct alleged during the period of time for which the review was to apply, Lt. Bruno stated that the information for such a complaint about Plaintiff Versher's performance used for the review was given to her by Defendants Sgt. Wallace, Lt. Tilton, and Capt. Pecot.

80.    Plaintiff reviewed and rebutted the work performance review as being undeserved and challenged the basis for such review. Shortly after her written challenge, Plaintiff was asked by Defendant Capt. Pecot if they could just shred the review and pretend it did not happen.

81.    On or about February 12, 2007, Defendant Lt. Tilton prepared and served on Plaintiff Versher a second "Employee Performance Appraisal."   This time the appraisal was stellar and without significant blemish, and commented that Plaintiff Versher was an excellent employee for the Sheriff's Department. The second appraisal was for the same time period, same conduct, the same work and the same performance as before.   The difference between the two performance reviews being that the written

complaint to the Department of Fair Employment and Housing was served on defendant in the time between the first and the second.

82.    However, the reprisals did not stop. On May 16, 2007, plaintiff was called to a meeting with her supervisors, Defendants Wallace, Tilton and Pecot. Plaintiff asked if she needed a union representative if there was any claim of wrongdoing on Plaintiff's part. Plaintiff was told by Defendant Tilton that she was not in any trouble. If there was any claim of wrongdoing, as a Peace Officer, Plaintiff was entitled to union representation under the National Labor Relations Act and the California Peace Officer's Procedural Bill of Rights, (California Government Code Section 3300.) Contrary to the specific representation of Defendant Tilton, upon participating in the meeting, Plaintiff was accused by her superiors present, Defendants Wallace, Tilton and Pecot, of violating San Francisco Sheriff's Departmental Rule Section 2.35 in that Plaintiff failed to notify her superiors that she had a close relative in her custody and supervision, allegedly her niece, a woman by the name of Tricia Hurd, and not informing her supervisors of a family member being under her custody. At the time of the meeting and allegations against her, all three defendants knew that there was no truth to such an allegation and continued to make the allegation and violation of the rights of this plaintiff without regard to their investigation which demonstrated no family relationship.

83.    On or about June 13, 2007, plaintiff took charge of CJ#8, in "D" pod, an all female pod staffed by only female deputies. Plaintiff was required to staff the unit by herself with 56 inmates under her immediate supervision and inspections about to occur.

   (a)    On top of an immense work load, plaintiff was told at the start of her shift that there were three inmates in a holding cell.

   (b)    The written procedures of the San Francisco Sheriff's Department, specifically the San Francisco Sheriff's Department County Jail # 8 Operation Manual, Pod Management and Supervision, Procedure 36, Section III Routine Operation, Division D, commands that the deputy who places prisoners in a holding cell notify her supervisor and advise if medical attention is necessary.

   (c)    This holding cell for Pod D lacks any designation or protocol for the number of prisoners, the type of prisoners, any limitations on use of the pod, and any limitations on housing of prisoners.

   (d)    The female graveyard deputy put three prisoners into the holding cell because they were

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 18
Complaint for Damages & Injunctive Relief

1    "horse playing."

2    (e) Plaintiff worked the day shift (07:00 to 15:00 hours) by herself and without incident.

3    (f) There was neither protocol in place for plaintiff to alter or amend the holding cell assignment
4       nor any protocol for plaintiff to advise her supervisors of the presence of inmates in the
5       holding cell.

6    (g) The presence of these inmates in the holding cell and information as to why they were in the
        holding cell was made known to the supervisor by reason of the log kept for that pod which
7       was signed by the graveyard deputy and the graveyard supervisor.

8    (h) Plaintiff had never been instructed, in writing or otherwise, to advise her supervisor or
9       anyone else when there are inmates in the holding cell from a prior shift.

10   (i) Plaintiff's supervisor had equal access to the information about the presence of inmates in the
11      cell by reason of the log.

12   (j) Regardless, on June 26, 2007, plaintiff sustained a written disciplinary action for not advising
13      her supervisor of the presence of three inmates in the holding cell and having three people in
14      a one person cell.

15   (k) Said written disciplinary action was without any factual basis and was in whole or substantial
16      part, retaliation for having complained of gender based discrimination by Plaintiff Deputy
        Versher.
17

     84.    That as a result of the repeated complaints by Plaintiff Versher, Plaintiff has sustained adverse
18
     employment actions and harm likely to cause a reasonable deputy to be chilled in seeking to bring
19
     complaints of discrimination to the employer.

20   85.    On or about February 22, 2007, Plaintiff ANJIE VERSHER, filed a complaint with the City and
21   County of San Francisco's Controller's offer with respect to her retaliation complaints under Labor Code
22   Section 1102.5 and violation of Peace Officer's Procedural Bill of Rights, Government Code Section
23   3300, et seq.   Said complaints were rejected and denied in writing by the City and County of San
24   Francisco on or about March 6, 2007.

25   ///

26   ///

27   ///

28   ///

**E.    Internal Complaints, Administrative Complaints And Issuance of Right To Sue**

86.    The plaintiffs herein have provided numerous internal complaints, administrative complaints and secured right to sue letters or otherwise exhausted administrative procedures.

87.    On or about October 2, 2006, on behalf of each of the plaintiffs herein, the San Francisco Deputy Sheriff's Association did write to Sheriff Michael Hennessey objecting to the policy in question as illegal gender based discrimination.  On or about October 18, 2006, in response to the letter sent to Sheriff Michael Hennessey, Defendant Chief Arata indicated that the Sheriff's Department would continue with the two tiered gender based assignment of hours and working conditions pursuant to the new policy.

88.    On or about October 18, 2007 on behalf of each of the plaintiffs herein, the San Francisco Deputy Sheriff's Association did write to Director of Employee Relations, Department of Human Resources, for the City and County of San Francisco objecting to the policy as illegal gender based discrimination.

89.    On or about October 19, 2006, on behalf of each of the plaintiffs herein, the San Francisco Deputy Sheriff's Association did write to Under Sheriff Jan Dempsey objecting to the policy as illegal gender based discrimination and offering alternatives to the female deputy only policy in female only pods.  The offer was rejected.

90.    Shortly after the institution of female only deputies in female only pods on or about October 7, 2006, plaintiffs, including Plaintiff Anjie Versher, complained of said actions as discriminatory and harmful to women in muster to her immediate supervisors.  Thereafter, since her immediate supervisors refused to talk with her and seek a remedy to the illegal discriminatory conduct and harm caused to plaintiff, towards the end of October 2006, Plaintiff Versher did approach and complain directly to the top manager at her unit, specifically Defendant Chief Thomas Arata, the top level jail commander.  After voicing her complaint to him, he dismissed the complaint and told her that she failed to follow the chain of command.  Plaintiff Versher told him that she had complained and that she did not trust them because they were not responding to her complaints and were retaliating against her.  Defendant Arata told Versher that he would talk to Captain Pecot.  Nothing further happened and at no time did Captain Pecot approach Plaintiff.

91.    In addition to verbal complaints, Plaintiff Versher filed a complaint of gender based discrimination with the Department of Fair Employment and Housing on December 4, 2006.  Said

---

1  Department of Fair Employment and Housing issued a right to sue letter to plaintiff in this matter on or
2  about December 13, 2006.

3  92.    Further and in addition to verbal complaints, Plaintiff Versher filed a complaint of gender based
4  discrimination with the Superior Court of California in the City and County of San Francisco on or about
5  February 20, 2007.

6  93.    After months of verbal complaints, on February 25, 2007, Plaintiff Mattie Spires-Morgan drafted
   a written grievance regarding outstanding safety issues in the female pod of CJ#8 due to the gender
7  based discriminatory policy for assignment of female deputies to the female pods, which included short
8  staffing due to the refusal to place available men in the female pots, and lighting differences in the
9  female pods creating an even greater unsafe work place. Plaintiff Mattie Spires-Morgan also
10 complained in writing of the safety issues created by having only one deputy for the entire pod where
11 that deputy is responsible for providing food and providing the medications, which left no one attentive
12 to the remainder of the pod and the security needs for the remainder of the pod. The Sheriff's
13 Department and Lt Minor only laughed at these complaints.

14 94.    On or about March 7, 2007, Plaintiff Sharon Castillo presented a written complaint of gender
15 based discrimination of only female deputies in female only pods to Sheriff Michael Hennessy, citing
16 safety, lack of opportunity for experience for promotions, and a loss of moral in being subjected to this
   system of gender based assignments and risks. On or about March 20, 2007, Sheriff Hennessy wrote to
17 Plaintiff Sharon Castillo without justifying a female deputy only policy in female pods. He rejected her
18 complaint and stated, "a condition of employment with this Department is the willingness to work in any
19 assignment, on any shift, with any days off. I am disappointed when employees forget this and believe
20 that they are somehow entitled to work some, but not all, assignments within the Department. .. Finally,
21 if you find you are stressed for any reason, I suggest you contact the Employee Assistance Program.
22 They offer a range of services to help people manage the stress in their lives."

23 95.    Plaintiffs complained, by means of cross-filing with the United States Government, the Equal
24 Employment Opportunity Commission, on or about March 28, 2007, (except for Plaintiff Roland Zanie
25 who filed on April 2, 2007) and received a Right to Sue on said claim of Discrimination and Retaliation
26     (a) on May 16, 2007, as and for Plaintiffs DENNIS CARTER, ALISA DAVIS-ZEHNER, ARTURO
27         MEDRANO, ANTHONY PEPPERS, VINCENT QUOCK, WENDY RODGERS-WELLS,
28         LANA SLOCUM, ERNEST SMITH, TONYETTE SMITH-AL GHANI, MATTIE SPIRES-

1 | MORGAN, KENNETH TAN, ANJIE VERSHER, BONNIE WESTLIN, YVETTE WILLIAMS,
2 | ROLAND ZANIE, MICHAEL ZEHNER;

3 | (b) on May 21, 2007, TERESA FOX, TORI JACKSON, LISA JANSSEN, MICHAEL JONES,
4 | RICHARD LEE, SANDRA MACLIN-GIBSON, SUKHWANT MANN, GLORIA MARTIN;

5 | (c) on or about May 22, 2007, as and for Plaintiffs MERCY AMBAT, ZAINABU ANDERSON,
6 | JOHN ARITA, SHARON CASTILLO, JOANNA CROTTY, TEQUISHA CURLEY, MARLA
DENZER, PATTI FLYNN, MARC NUTI, KEVIN O'SHEA

7 | (d) on or about June 6, 2007, as and for Plaintiff JON GRAY,

8 | 96. That by means of cross filing with the EEOC for and on behalf of the Department of Fair
9 | Employment and Housing, on or about March 28, 2007, all plaintiffs (except for Roland Zanie who filed
10 | his charge on or about April 2, 2007) filed their complaint of discrimination and retaliation with the Fair
11 | Employment and Housing Department of the State of California. That on or about March 28, 2007, and
12 | pursuant to the cross filing agreement between the EEOC and the DFEH, a right to sue on behalf of the
13 | claims under the Fair Employment and Housing Act were filed, except for Roland Zanie who's Right to
14 | Sue under the DFEH was filed on or about April 2, 2007.

15 | 97. Plaintiffs have filed suit within one year of the issuance of the right to sue letters under the Fair
16 | Employment and Housing Act and within 90 days of the issuance of same under Title VII by the EEOC.

17 | 98. On or about February 22, 2007, Plaintiff ANJIE VERSHER, filed a complaint with the City and
County of San Francisco's Controller's offer with respect to her retaliation complaints under Labor Code
18 | Section 1102.5 and violation of Peace Officer's Procedural Bill of Rights, Government Code Section
19 | 3300, et seq. Said complaints were denied in writing by the City and County of San Francisco on or
20 | about March 6, 2007. Said complaint was thereafter rejected and denied in writing by the City and
21 | County of San Francisco.

22 | 99. On or about April 7, 2007 Plaintiffs LISA JANSSEN, and MATTIE SPIRES-MORGAN filed
23 | complaints with the City and County of San Francisco's Controller's offer with respect to their
24 | retaliation complaints under Labor Code Section 1102.5 and violation of Peace Officer's Procedural Bill
25 | of Rights, Government Code Section 3300, et seq. Said complaints were denied in writing by the City
26 | and County of San Francisco on or about April 23, 2007.

27 | 100. On or about April 20, 2007, Plaintiffs LISA JANSSEN and MATTIE SPIRES-MORGAN filed
28 | complaints with the California Labor and Workforce Development Agency pursuant to Labor Code

---

*Ambat et al. v. CCSF et al.*     United States District Court, Northern District of California   Page 22
Complaint for Damages & Injunctive Relief

1   Sections 1102.5 and 2699 et seq, with more than 33 days having passed since the issuance of the charge
2   and by operation of law, the administrative process has been concluded.

3   101.    On or about June 1, 2007 and again on June 11, 2007, Plaintiff Anjie Versher, by and through
4   her representative filed a complaint and a claim with the City and County of San Francisco, through the
5   Sheriff's Department, for violation of the Peace Officer's Procedural Bill of Rights. The claim of
6   Plaintiff Anjie Versher as to a violation of the Peace Officer's Procedural Bill of Rights was denied by
    the Sheriff's Department on or about June 8, 2007.

7   ////
8   ////

**FIRST CAUSE OF ACTION**

(Gender Discrimination, Title VII, Civil Rights Act of 1964  (42 USC 2000(e) et seq)
(Plaintiffs v.  Defendant City and County of San Francisco)

102.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth here.

103.    Defendant City and County of San Francisco, were, at all times relevant, an employer within the meaning of the Civil Rights Act of 1964 (42 USC 2000(e) et seq.)  Specifically, that at all times relevant the said defendant carries on activities which affects commerce within and employs more than 15 people.  (42 USC 2000e (b) and (h))

104.    At all relevant times, Plaintiffs were employed by the Defendant CITY AND COUNTY OF SAN FRANCISCO.

105.    Plaintiffs MERCY AMBAT, ZAINABU ANDERSON, SHARON CASTILLO, JOANNA CROTTY, TEQUISHA CURLEY, ALISA DAVIS-ZEHNER, MARLA DENZER, PATTI FLYNN, TERESA FOX, TORI JACKSON, LISA JANSSEN, SANDRA MACLIN-GIBSON, GLORIA MARTIN, WENDY RODGERS-WELLS, LANA SLOCUM, TONYETTE SMITH-AL GHANI, MATTIE SPIRES-MORGAN, ANJIE VERSHER, BONNIE WESTLIN, and YVETTE WILLIAMS were treated less favorably in the terms and conditions of employment and sustained numerous adverse actions as a result of their gender, to wit female, in that they were:

    (a)    Exposed to increased risk of physical harm over their male deputies due to conditions of the female pods, as cited above, that these female deputies are forced to work in;

    (b)    Exposed to increased risk of physical harm over their male counterparts due to the lack of adequate staffing, as cited above;

    (c)    Exposed to increased risk of physical harm over their male counterparts due to depravation of equipment and facilities to handle the inmates which pose a greater risk of physical injury due to mental and emotional stability issues;

    (d)    Exposed to increased risk of physical harm over their male counterparts by mixing a mental and emotionally unstable group with others;

    (e)    Compelled to work harder with inmates who are more difficult than male inmates.

    (f)    Female inmates require more attention and are more violent towards each female plaintiff;

    (g)    These female plaintiffs routinely work though breaks and lunch periods in order to protect  themselves and their partner from the risk of physical harm exacerbated by

---

*Ambat et al. v. CCSF et al.*        United States District Court, Northern District of California    Page 24
Complaint for Damages & Injunctive Relief

1

supervising the pod alone, and are deprived pay and compensation for such work;

2

3

(h) Limited in their job duties and posts compared to their male counterparts limiting their ability to compete for advancement;

4

5

(i) Subject to falsification of their achievements and trainings by Department managers who refused to permit them to train at other posts in order to preserve their position in CJ#8;

6

(j) Harmed and reduced in their ability to promote and secure advancement;

7

(k) Subjected to increased levels of job stress as compared to their male counterparts.

106. At all relevant times during their employment, these female Plaintiffs were treated less favorably

8

than others who are male seeking and holding employment with Defendant City and County of San

9

Francisco, due to plaintiffs' gender, and within 300 days of such adverse discriminatory actions they

10

filed discrimination claims with the Equal Employment Opportunity Commission for use by the EEOC

11

and for cross filing with the DFEH.

12

107. As a result of the discriminatory practice of assigning only female deputies to female pods of

13

CJ#8, Plaintiffs suffered general damages and emotional distress due to the acts of discrimination.

14

108. Plaintiffs JOHN ARITA, DENNIS CARTER, JON GRAY, MICHAEL JONES, RICHARD

15

LEE, SUKHWANT MANN, ARTURO MEDRANO, MARC NUTI, KEVIN O'SHEA, ANTHONY

16

PEPPERS, VINCENT QUOCK, ERNEST SMITH, KENNETH TAN, ROLAND ZANIE, and

17

MICHAEL ZEHNER, have been treated less favorably because of gender, male, in the terms and conditions of employment and sustained numerous adverse actions in that they were:

18

(a) Denied overtime work and pay;

19

20

(b) Reduced in their ability to promote and secure advancement due to elimination of opportunity to function at various posts.

21

109. At all relevant times during their employment, these male Plaintiffs were treated less favorably

22

than others who are female seeking and holding employment with Defendant City and County of San

23

Francisco, due to plaintiffs' gender, and within 300 days of such adverse discriminatory actions they

24

filed discrimination claims with the Equal Employment Opportunity Commission for use by the EEOC

25

and for cross filing with the DFEH.

26

110. As a result of the discriminatory practice of assigning only female deputies to female pods of

CJ#8, Plaintiffs suffered general damages and loss of income due to the acts of discrimination.

27

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

28

*Ambat et al. v. CCSF et al.*      United States District Court, Northern District of California    Page 25
Complaint for Damages & Injunctive Relief

1

2

3

**SECOND CAUSE OF ACTION**
(Gender Discrimination, FEHA (California Government Code § 12940 (a))
(Plaintiffs v. Defendant City and County of San Francisco)

4   111.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth here.

5   112.    Defendant CITY AND COUNTY OF SAN FRANCISCO, is and was, at all times relevant, an

6   employer as defined by California Government Code Section 12926. That at all times relevant the said

7   defendant carries on activities which affects commerce within and employs more than five (5) people.

8   113.    At all relevant times, Plaintiffs were employed by the CITY AND COUNTY OF SAN

9   FRANCISCO.

10  114.    Plaintiffs MERCY AMBAT, ZAINABU ANDERSON, SHARON CASTILLO, JOANNA

    CROTTY, TEQUISHA CURLEY, ALISA DAVIS-ZEHNER, MARLA DENZER, PATTI FLYNN,

11  TERESA FOX, TORI JACKSON, LISA JANSSEN, SANDRA MACLIN-GIBSON, GLORIA

12  MARTIN, WENDY RODGERS-WELLS, LANA SLOCUM, TONYETTE SMITH-AL GHANI,

13  MATTIE SPIRES-MORGAN, ANJIE VERSHER, BONNIE WESTLIN, and YVETTE WILLIAMS

14  were treated less favorably in the terms and conditions of employment and sustained numerous adverse

15  actions as a result of their gender, to wit female, in that they were:

16      (a)    Exposed to increased risk of physical harm over their male deputies due to conditions of

17             the female pods, as cited above, that these female deputies are forced to work in;

18      (b)    Exposed to increased risk of physical harm over their male counterparts due to the lack

19             of adequate staffing, as cited above;

20      (c)    Exposed to increased risk of physical harm over their male counterparts due to

               depravation of equipment and facilities to handle the inmates which pose a greater risk of

21             physical injury due to mental and emotional stability issues;

22      (d)    Exposed to increased risk of physical harm over their male counterparts by mixing a

23             mental and emotionally unstable group with others;

24      (e)    Compelled to work harder with inmates who are more difficult than male inmates.

25      (f)    Female inmates require more attention and are more violent towards each female

26             plaintiff;

27      (g)    These female plaintiffs routinely work though breaks and lunch periods in order to

28             protect  themselves and their partner from the risk of physical harm exacerbated by

supervising the pod alone, and are deprived pay and compensation for such work;

(h)   Limited in their job duties and posts compared to their male counterparts limiting their ability to compete for advancement;

(i)   Subject to falsification of their achievements and trainings by Department managers who refused to permit them to train at other posts in order to preserve their position in CJ#8;

(j)   Harmed and reduced in their ability to promote and secure advancement;

(k)   Subjected to increased levels of job stress as compared to their male counterparts.

115.   At all relevant times during their employment, these female Plaintiffs were treated less favorably than others who are male seeking and holding employment with Defendant City and County of San Francisco, due to plaintiffs' gender, and within one year of such adverse discriminatory actions they filed discrimination claims with the Department of Fair Employment and Housing on March 28, 2007, who issued a right to sue letter on or about March 28, 2007, as stated above.

116.   As a result of the discriminatory practice of assigning only female deputies to female pods of CJ#8, Plaintiffs suffered general damages and emotional distress due to the acts of discrimination.

117.   Plaintiffs JOHN ARITA, DENNIS CARTER, JON GRAY, MICHAEL JONES, RICHARD LEE, SUKHWANT MANN, ARTURO MEDRANO, MARC NUTI, KEVIN O'SHEA, ANTHONY PEPPERS, VINCENT QUOCK, ERNEST SMITH, KENNETH TAN, ROLAND ZANIE, and MICHAEL ZEHNER, have been treated less favorably because of gender, male, in the terms and conditions of employment and sustained numerous adverse actions in that they were:

(a)   Denied overtime work and pay;

(b)   Reduced in their ability to promote and secure advancement due to elimination of opportunity to function at various posts.

118.   At all relevant times during their employment, these male Plaintiffs were treated less favorably than others who are female seeking and holding employment with Defendant City and County of San Francisco, due to plaintiffs' gender, and within 300 days of such adverse discriminatory actions they filed discrimination claims with the Equal Employment Opportunity Commission for use by the EEOC and for cross filing with the DFEH, as aforesaid above.

119.   As a result of the discriminatory practice of assigning only female deputies to female pods of CJ#8, Plaintiffs suffered general damages and loss of income due to the acts of discrimination.

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**
(Gender Employment Restrictions Title VII (42 USC 2000(e))
(Plaintiffs v. Defendant City and County of San Francisco)

120.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth here.

121.    That in order to preclude and prevent discrimination and to thwart the badges of discrimination, any and all attempts to exclude any gender from participating in seeking employment is precluded by Title VII (42 USC 2000(e)).

122.    That as a result of having created the female pods in CJ#8, and having a policy and practice to exclude males from employment in said pods, since October 2006, Defendant CITY AND COUNTY OF SAN FRANCSCO did advertise and limit the opportunity for employment in the female pods to female deputies by means of written notice and postings, all in violation of Title VII (42 USC 2000(e))

123.    That as a result of violations of Title VII (42 USC 2000(e)) plaintiffs have been injured.

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

**FOURTH CAUSE OF ACTION**
(Advertisement for Gender Discrimination, FEHA (California Government Code § 12940 (d))
(Plaintiffs v. Defendant City and County of San Francisco)

124.    Plaintiffs incorporate each of the foregoing allegations of this complaint as if set forth here.

125.    That in order to preclude and prevent discrimination and to thwart the badges of discrimination, any and all attempts to exclude any gender from participating in seeking employment is precluded by California Government Code Section 12940 (d).

126.    That as a result of having created the female pods in CJ#8, and having a policy and practice to exclude males from employment in said pods, since October 2006, Defendant CITY AND COUNTY OF SAN FRANCSCO did advertise and limit the opportunity for employment in the female pods to female deputies by means of written notice and postings, all in violation of California Government Code Section 12940 (d).

127.    That as a result of said violations of California Government Code Section 12940 (d), plaintiffs have been injured as aforesaid.

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

////

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 28
Complaint for Damages & Injunctive Relief

## FIFTH CAUSE OF ACTION

(Retaliation For Protected Activity (28 USC 2000e (e))
(Plaintiffs Janssen, Morgan-Spires, Anderson, and Versher v. All Defendants)

128.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth here.

129.    That motivated as retribution for plaintiffs having engaged in a protected activity, complaining to their superiors, the Department of Fair Employment and Housing, and the Superior Court of California of the unlawful form of gender based discrimination and/or the resulting harm, injury, and increased risk of harm and injury, plaintiffs suffered losses and adverse actions as a result of said complaints;

130.    As a result of retaliation by Defendants CCSF, THOMAS ARATA, STEPHEN TILTON, RODERICK WALLACE, and JOHNA PECOT, for such protected activity,

(a)    Plaintiff LISA JANSSEN was charged with violations of the code of conduct of the San Francisco Sheriff's Department and sustained a written adverse action which will affect her ability to promote and seek advancement in the future and threatened her with loss of employment should she complain in that manner again;

(b)    Plaintiff MATTIE SPIRES-MORGAN was charged with various violations of the code of conduct of the San Francisco Sheriff's Department and sustained an adverse action which will affect her ability to promote and seek advancement in the future

(c)    Plaintiff ZAINABU ANDERSON, who sought time off from work under the Family and Medical Leave Act for health conditions of her son, with various violations of the code of conduct of the San Francisco Sheriff's Department and sustained an adverse action which will affect her ability to promote and seek advancement in the future;

(d)    Plaintiff ANJIE VERSHER sustained a retaliatory written performance appraisal, a written disciplinary action against her, was accused of failing to advise of the presence of a family member in custody, which will affect her ability to promote, affect her ability to seek a transfer to another assignment, and seek advancement in the future and threatened her with loss of employment should she complain in that manner again.

131.    Said actions are in violation of 28 USC 2000e, retaliation for having participated in a protected activity, complaining of gender based discrimination in the workplace.

132.    As a result of such retaliatory discrimination and conduct, plaintiffs have suffered general and special damages in an amount exceeding the jurisdictional minimum of this court.

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

1

2

### SIXTH CAUSE OF ACTION

(Retaliation For Protected Activity (California Government Code § 12940(k)))
(Plaintiffs Janssen, Morgan-Spires, Anderson, Versher v. All Defendants)

3

4

133.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth here.

134.    That motivated for retribution and revenge that plaintiffs having engaged in a protected activity,

5

complained to their superiors, complained in muster, complained the Department of Fair Employment

6

and Housing, and the Superior Court of California of the unlawful form of gender based discrimination

7

and/or the resulting harm, injury, and increased risk of harm and injury, plaintiffs suffered losses and

8

adverse actions as a result of said complaints;

9

135.    As a result of retaliation by Defendants CCSF, THOMAS ARATA, STEPHEN TILTON, and

10

RODERICK WALLACE, and JOHNA PECOT, for such protected activity,

11

      (e) Plaintiff LISA JANSSEN was charged with violations of the code of conduct of the San

12

          Francisco Sheriff's Depatrment and sustained a written adverse action which will affect her

13

          ability to promote and seek advancement in the future and threatened her with loss of

14

          employment should she complain in that manner again;

15

      (f) Plaintiff MATTIE SPIRES- MORGAN was charged with various violations of the code of

16

          conduct of the San Francisco Sheriff's Department and sustained an adverse action which

          will affect her ability to promote and seek advancement in the future

17

      (g) Plaintiff ZAINABU ANDERSON, who sought time off from work under the Family and

18

          Medical Leave Act for health conditions of her son,  with various violations of the code of

19

          conduct of the San Francisco Sheriff's Department and sustained an adverse action which

20

          will affect her ability to promote and seek advancement in the future;

21

      (h) Plaintiff ANJIE VERSHER sustained a retaliatory written performance appraisal, a written

22

          disciplinary action against her, was accused of failing to advise of the presence of a family

23

          member in custody, which will affect her ability to promote, affect her ability to seek a

24

          transfer to another assignment, and seek advancement in the future and threatened her with

          loss of employment should she complain in that manner again.

25

136.    Said actions are in violation of 28 USC 2000e, retaliation for having participated in a protected

26

activity, complaining of gender based discrimination. As a result of such retaliation, plaintiffs have

27

suffered general and special damages in an amount exceeding the jurisdictional minimum of this court.

28

      WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

---

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 30
Complaint for Damages & Injunctive Relief

## SEVENTH CAUSE OF ACTION

(Failure to Prevent Discrimination/Retaliation (Government Code § 12940(k))
(Plaintiffs v. Defendant City and County of San Francisco)

137.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth here.

138.    Defendants City and County of San Francisco, and Does 1 through 10, had an affirmative duty to take all reasonable steps necessary to prevent discrimination on the basis of and due to Plaintiffs' gender as mandated by California Government Code Section 12940 (k).

139.    Defendants City and County of San Francisco., and Does 1 through 10, breached their affirmative duty to take all reasonable steps necessary to prevent discrimination and provide accommodations and breached such affirmative duty to Plaintiffs.

140.    As a result of the failure to take all reasonable steps, including the failure to train, monitor, protect, enforce, and oversee the mandates for anti-discrimination rules Plaintiffs have been injured in the manner set forth herein.

141.    As a result of such intentional discrimination, Plaintiffs have suffered general and special damages in an amount exceeding the jurisdictional minimum of this court.

142.    As a further proximate result of Defendant CITY AND COUNTY OF SAN FRANCISCO's intentional discriminatory actions against plaintiffs, plaintiffs have suffered a loss of income and future income loss, in an amount not yet determined and Plaintiffs pray leave that when these amounts are known, that they may amend this complaint to allege such amounts.

143.    As a further proximate result of Defendant CITY AND COUNTY OF SAN FRANCISCO's intentional discriminatory actions against plaintiffs, plaintiffs have suffered a loss of income and future medical expenses in an amount not yet determined and Plaintiffs pray leave that when these amounts are known, that they may amend this complaint to allege such amounts.

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

////

////

////

///

///

**EIGHTH CAUSE OF ACTION**

(Whistleblower – California Labor Code § 1102.5(b))

(Plaintiffs Janssen, Morgan-Spires v. Defendant City and County of San Francisco)

144.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth at length.

145.    Plaintiffs JANSSEN, SPIRES-MORGAN, and VERSHER did report to a government agency, the San Francisco Sheriff's Department their complaint that the practice of staffing the female jail pods was a violation of law under California Government Code Section 12940 (a) and California Penal Code Section 4021 (b).

146.    Plaintiff complained to and brought this potential illegal conduct to the attention of the Defendant CITY AND COUNTY OF SAN FRANCISCO pursuant to the training given to plaintiffs for reporting such activity. Plaintiffs complained to their immediate superiors as well as those in the Department of Human Resources.

147.    Defendant CITY AND COUNTY OF SAN FRANCISCO, by and through their agents engaged in acts of reprisal, retaliation, threats, coercion, or similar acts, against Plaintiffs to cause harm and damage to plaintiffs and did in fact cause harm and damage for plaintiffs having made the complaints and disclosures as stated herein, all in violation of California Labor Code Section 1102.5 (b).

148.    Plaintiffs were at all relevant times, employees of the Defendant CITY AND COUNTY OF SAN FRANCISCO. Their  actions regarding the disclosure of improper governmental activities by Defendants and others to a law enforcement and government agencies were permitted and protected activities by California Labor Code §1102.5.

149.    As a result of the conduct of Defendants CITY AND COUNTY OF SAN FRANCISCO it has become liable in this statutory action for damages and civil penalty brought against it by Plaintiffs pursuant to Labor Code §1102.5.

150.    That as a direct and proximate result of the conduct of Defendant CITY AND COUNTY OF SAN FRANCISCO, as aforesaid, Plaintiffs sustained severe personal injuries and general damages.

151.    That as a direct and proximate result of the conduct of Defendant CITY AND COUNTY OF SAN FRANCISO as aforesaid, Plaintiffs have necessarily incurred liability for medical aid and attention, and incurred a loss of wages and income now and in the future, all to plaintiff's special damage in an amount not presently known, and plaintiffs pray leave that when such amount is ascertained, plaintiffs may be permitted to amend to insert the same herein with appropriate allegations.

WHEREFORE, plaintiffs pray judgment against defendants as set forth below:

*Ambat et al. v. CCSF et al.*    United States District Court, Northern District of California    Page 32
Complaint for Damages & Injunctive Relief

**NINTH CAUSE OF ACTION**
(POPBR– California Government Code § 3309.5)
(Plaintiff Versher v. Defendant City and County of San Francisco)

152.    Plaintiffs incorporate each of the foregoing allegations of this complaint as is set forth at length.

153.    That each of the plaintiffs hold the status of Peace Officer as that term is defined by Penal Code Section 830, et seq. As such, pursuant to California Government Code Section 3300, each has a right to enjoy procedural safeguards found in the Peace Officer's Procedural Bill of Rights.

154.    That defendants did knowingly, intentionally and maliciously violate those rights for Plaintiff Versher subjecting them to claims for liability pursuant to Government Code Section 3309.5 to wit:

155.    As to Plaintiff Versher, she complained to all Defendants and was thereafter ordered to attend and be interrogated by her supervisors. That the orders to attend and attend without union representation in the investigative phase of questioning of Plaintiff Deputy Versher regarding alleged violations of the rules of the Sheriff's Department was a violation of the Peace Officer's Bill of Rights and done maliciously and intentionally to harm plaintiff when said questioning and interrogation was the only topic raised, to wit: when asked if this is something that could lead to disciplinary action, Defendant Tilton indicated, with the tacit agreement of Defendants Wallace and Pecot, that there was no need for her union and there was nothing that she had done that was wrong, with Defendants Wallace and Pecot present, in agreement, and stating nothing to the contrary.

156.    That each of the plaintiffs suffered actual damages at the hands of the wrongdoing of the said defendants and therefore entitled to compensation for such injury pursuant to Government Code Section 3309.5.

157.    That the conduct of each of the defendants as set forth here was and is malicious in the denial of the rights of the plaintiffs and done with the intent to harm the plaintiffs, such that each of the plaintiffs are entitled to a civil penalty for the wrongdoing of the said defendants as set forth in California Police Officer's Procedural Bill of Rights of $25,000, Government Code Section 3309.5.

**WHEREFORE**, plaintiffs pray judgment against defendants as follows:

      a.  For a money judgment awarding Plaintiffs a sum according to proof as general damages for physical and mental pain and emotional distress, anguish and suffering against each of the defendants;

      b.  For a money judgment representing compensatory damages including lost wages, and all other sums of money, including future benefits and future wage loss, retirement

benefits and other employment benefits, together with interest on said amounts, according to proof;

c.  For a money judgment representing compensatory damages including medical expenses and other special expenses for treatment and care, and all other sums of money necessary to care for the Plaintiffs as a result of the conduct of Defendants.

d.  For a civil penalty in the amount of $10,000 for violation of Labor Code Section 1102.5 (b) pursuant to the grant of such civil penalty as set forth in Labor Code Section 1102.5 (f).

e.  For a civil penalty in the amount of $25,000 for violation of Government Code Section 3309.5 pursuant to the grant of such civil penalty as set forth in Government Code Section 3309.5(e), as well as actual damages suffered by Plaintiffs Janssen, Spires-Morgan, and Versher.

f.  For an injunction commanding that Defendant City and County of San Francisco Sheriff's Department, and any subsequent affiliated corporation or business entities, post, train, and enforce the rights of all employees under the Fair Employment and Housing Act, to be free of discrimination, harassment and retaliation;

g.  For punitive damages according to proof against each of the defendants;

h.  For costs of suit, including attorneys' fees; and

i.  For any other relief that is just and proper

DATED: July 12, 2007                          Respectfully submitted,

MURRAY & ASSOCIATES

NOAH KANTER
Attorney for Plaintiffs

////

////

///

///

---

*Ambat et al. v. CCSF et al.*          United States District Court, Northern District of California    Page 34
Complaint for Damages & Injunctive Relief

1

JURY TRIAL DEMANDED

2

Plaintiffs hereby demand a jury trial on all claims contained in her complaint before this court.

3

4    DATED: July 12, 2007                                Respectfully submitted,

5                                                         MURRAY & ASSOCIATES

6

7

8                                                         NOAH KANTER
                                                          Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Ambat et al. v. CCSF et al.*            United States District Court, Northern District of California    Page 35
Complaint for Damages & Injunctive Relief