DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH S. SALVESON, State Bar #83788
Chief Labor Attorney
MARGARET BAUMGARTNER, State Bar #151762
JILL J. FIGG, State Bar #168281
RAFAL OFIERSKI, State Bar #194798
Deputy City Attorneys
Fox Plaza
1390 Market Street, Fifth Floor
San Francisco, California 94102-5408
Telephone:   (415) 554-3800
Facsimile:   (415) 554-4248

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO ET AL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MARCY AMBAT, et al., | Case No. C 07-3622 SI |
|---|---|
| Plaintiffs, | DECLARATION OF JILL FIGG DAYAL IN SUPPORT OF SEPARATE CASE MANAGEMENT CONFERENCE STATEMENT |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | CMC DATE:   August 29, 2008<br>Time:   2:30 p.m.<br>Judge:   Hon. Susan Illston<br>Place:   Courtroom #10<br>   19th Floor |
| Defendants. | |
| | Trial Date:   None Set |

FIGG DAYAL DECLARATION ISO CMC STMT
CASE NO. C 07-3622 SI

1

n:\labor\li2007\080110\00504936.doc

I, JILL FIGG DAYAL, declare:

1. I am an attorney at law duly admitted to practice before all the courts of the State of California. I make this declaration of my own knowledge and, if called as a witness, I could and would testify to the facts set forth herein.

2. I am employed as a Deputy City Attorney in the Office of the City Attorney for the City and County of San Francisco and, with Deputy City Attorneys Margaret Baumgartner and Rafal Ofierski, I represent defendants in this matter.

3. I submit this declaration pursuant to the Court's standing Case Management Conference Order that requires the parties to explain why they are not filing a Joint Case Management Conference Statement.

4. On or about August 19, 2008, Mr. Ofierski and I called plaintiffs' counsel, Christina Johnson to meet and confer regarding the Joint Case Management Conference Statement. I advised Ms. Johnson that I believed that our Statement would have to comply with the Court's standing Case Management Conference Order, as well as the Standing Order For all Judges of the Northern District Of California. I advised Ms. Johnson that I would draft the Joint Statement to comply with these two orders. During our conversation on August 19, Ms. Johnson, Mr. Ofierski and I agreed that we would have a conference call on August 21, 2008 at 2:00 p.m.

5. Mr. Ofierski and I drafted the Joint Statement on August 19 and 20, 2008. On August 20, 2008, I sent a copy of the draft Joint Statement to Ms. Johnson via e-mail. A true and correct copy of this e-mail is attached in the e-mail chain attached hereto as Exhibit A.

6. On August 21, 2008, Mr. Ofierski and I called Ms. Johnson for our prescheduled 2:00 p.m. meet and confer call. Ms. Johnson was not available. At 2:04 p.m., I sent Ms. Johnson an e-mail requesting that she contact me so that we could meet and confer. Having not heard from Ms. Johnson, I sent her another e-mail at 3:50 p.m. advising her that I was leaving for a doctor's appointment, but that we needed to schedule a time to meet and confer. Ms. Johnson then sent me an e-mail advising me that she was available the following day (August 22, 2008) at 10:00 a.m. I sent Ms. Johnson a reply e-mail confirming that we could call her on August 22 at 10:00 a.m. A true and correct copy of these e-mails are attached in the e-mail chain attached hereto as Exhibit A.

7. On August 22, 2008 at 10:00 a.m. Mr. Ofierski and I called Ms. Johnson to meet and confer. We meet and conferred for approximately 30 minutes. During our call, Ms. Johnson requested that we make several changes to the Joint Statement. We advised her that we would make all of her requested changes. We requested that, per the Court's standing order, she insert the amount of damages plaintiffs are seeking and how they are calculated in Section II.A.6 of the Joint Statement. She said that she would e-mail us this information "within the hour." During this call Ms. Johnson advised us that she was leaving for the day at 3:00 p.m.

8. On August 22, 2008, after our meet and confer discussion, Mr. Ofierski and I revised the Joint Statement and made all of the changes that Ms. Johnson requested in our conversation. In addition, after our discussion, Ms. Johnson sent us an e-mail requesting that we delete Section II.A.2 and insert in its place a section that she had drafted in the Joint Case Management Statement in the related case of *Walker et al. v. City and County of San Francisco*, United States District Court, Northern District of California, Case No. 3:08-cv-02406-PJH, filed May 9, 2008. We agreed to Ms. Johnson's request, and so revised Section II.A.2. At 12:30 p.m. I e-mailed Ms. Johnson a redlined draft of the Joint Statement reflecting all of the changes that she had requested. A true and correct copy of this e-mail is attached in the e-mail chain attached hereto as Exhibit A. The Joint Statement also included defendants' discovery and pretrial schedule that was not previously completed. I advised Ms. Johnson that we were still waiting for her section on damages.

9. On August 22, 2008, having not heard from Ms. Johnson, at 2:10 p.m. I called her office to talk to her. The receptionist advised me that she was busy and unable to take calls. I then sent Ms. Johnson an e-mail to check in and see where she was on her damage section that I needed to include in the Joint Statement. A true and correct copy of this e-mail is attached in the e-mail chain attached hereto as Exhibit A. Since she had advised me that she was leaving at 3:00 p.m., I wanted to get her additions prior to that time.

10. On August 22, 2008, Ms. Johnson sent me an e-mail at 2:27 p.m. advising me that she had sent the Joint Statement to her colleague, Larry Murray for review and editing. Ms. Johnson had previously advised us that Mr. Murray was on vacation. A true and correct copy of this e-mail is attached in the e-mail chain attached hereto as Exhibit A.

11. On August 22, 2008, I replied to Ms. Johnson's e-mail at 2:45 p.m. and also copied Mr. Murray. I advised Mr. Murray that I would wait until 4:00 p.m. for his comments but if I did not have them by that time I would need to file a separate statement to ensure that I met the deadline of filing a statement today.

12. On August 22, 2008 at 2:58 p.m., I received an e-mail from Mr. Murray to which he attached his own separate statement. A true and correct copy of this e-mail and Mr. Murray's separate statement is attached in the e-mail chain attached hereto as Exhibit B.

13. Due to the fact that Mr. Murray's statement was entirely different from the one that Mr. Ofierski and I had prepared and discussed with Ms. Johnson, I was unable to sign off on Mr. Murray's separate statement. Also, due to the fact that Mr. Murray sent me the statement just one hour before I told him I would need to file something with the Court, I had no time to review, revise and meet and confer on Mr. Murray's statement.

14. In light of Ms. Johnson's and Mr. Murray's conduct following our meet and confer, we have filed a Separate Case Management Conference Statement. Defendants are filing the statement that I sent to Ms. Johnson, with all of the changes requested by her.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on the 22nd of August, 2008, San Francisco, California.

                                                /s/
                                            JILL FIGG DAYAL