IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCY AMBAT, ET AL. | No. C 07-03622 SI |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT AND DEFENDANT'S MOTION TO ENFORCE SETTLEMENT** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | |

On May 27, 2011, the Court heard argument on plaintiffs Lisa Janssen, Mattie Spires-Morgan, and Anjie Versher's Motion for Entry of Judgment and defendant's Motion to Enforce Settlement. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART and DENIES IN PART each motion.

**BACKGROUND**

These consolidated cases involved challenges by approximately thirty sheriff's deputies to a gender-based staffing policy of the San Francisco Sheriff's Department. In mid-2006, the Sheriff reorganized inmate housing in the San Francisco jails such that all female inmates were placed in County Jail #8 in female-only housing units, or "pods." Thereafter, in October 2006, the Sheriff implemented a policy requiring that only female deputies be assigned to staff these female pods. Plaintiffs in this case were both male and female sheriff's deputies who alleged that the Sheriff's staffing policy ("the Policy") amounts to employment discrimination. Additionally, several of the plaintiffs brought retaliation claims against defendant. The Court granted defendant summary judgment on almost all of plaintiffs' claims.

The Court denied defendant's motion for summary judgment on retaliation claims brought by three plaintiffs: Lisa Janssen, Mattie Spires-Morgan, and Anjie Versher ("plaintiffs"). Plaintiffs contended that defendant retaliated against them by reprimanding them for complaining that the Policy constituted gender discrimination and for participating in this lawsuit. They pointed to written reprimands, negative performance evaluations, "written counseling," and other conduct that they argued was retaliatory.

A day after the Court denied defendant's motion for summary judgment on plaintiffs' retaliation claims, and approximately three weeks before trial was scheduled to begin, the parties agreed to continue the trial date in order to enter into settlement negotiations on the remaining claims. A settlement conference was held with Chief Magistrate Judge Maria-Elena James on June 8 and June 10, 2010, and everyone agreed that the parties had settled the case. The agreement was read into the record. The Court entered an order dismissing the case with prejudice upon settlement. Doc. 292.

Almost immediately it became clear that the parties disagreed about how the settlement should be memorialized. Plaintiffs objected to the dismissal, requesting instead that judgment be entered incorporating the terms of the settlement. Doc. 293. Defendant objected the form of judgment proposed by plaintiffs, explaining its belief that there should be a separate, written settlement agreement, and then a simple judgment entered that stated that the retaliation claims had been dismissed. The Court referred this disagreement back to Magistrate Judge James, and the parties were unable to come to a resolution.

Currently before the Court are plaintiffs' motion for entry of judgment, and defendant's motion to enforce the settlement agreement.

**LEGAL STANDARD**

**I.     Motion for entry of judgment**

Under Rule 58(d) of the Federal Rules of Civil Procedure, a party may request that judgment be "set out in a separate document." Final judgment should "grant the relief to which each party is entitled." Fed. R. Civ. P. 54(c). *See Federal Deposit Ins. Corp. v. Becker*, No. C09-5476RJB, 2010 WL 3340524 (W.D. Wash. Aug. 23, 2010).

2

## II. Motion to enforce settlement

District courts have the inherent and equitable power to enforce settlement agreements in cases pending before them. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). This enforcement power extends to oral agreements, "'particularly when the terms are memorialized into the record.'" *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (quoting *Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000). However, courts cannot enforce a settlement agreement where none exists; the parties must have actually agreed to the terms of settlement before the court can enforce that settlement. *Cf. United States v. Ward Baking Co.*, 376 U.S. 327, 334 (1964). The moving party has the burden to present a prima facie case that the parties formed an enforceable settlement agreement. *See Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1137 n.19, 1140 (N.D. Cal. 1999).

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *see also Gates v. Rowland*, 39 F.3d 1439, 1444 (9th Cir. 1994). California law applies to a determination regarding the scope of the Settlement Agreement even though one of the underlying cause of action is federal. *See United Commercial Ins. v. Paymaster Corp.*, 962 F.2d 853, 857 (9th Cir. 1992). Under California law, the goal of contractual interpretation is to give effect to the mutual intention of the parties. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). The mutual intention of the parties is determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract, and the subsequent conduct of the parties. See *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998); *Hernandez v. Badger Construction Equipment Co.*, 28 Cal. App. 4th 1791, 1814 (1994).

## DISCUSSION

The parties agree that they reached a settlement agreement on plaintiffs' retaliation claims, and that the settlement agreement was memorialized on the record before Magistrate Judge James on June 10, 2010. They disagree over the terms of the settlement, and the procedure by which it should be reduced to writing. Plaintiffs argue that the agreement should be entered by the Court as part of a

3

1 written judgment exactly as it was stated on the record on June 10. Plaintiffs have filed a motion for
2 entry of judgment. Defendant argues that the parties agreed to execute a written settlement agreement
3 and that the written agreement should make clear certain other terms that were implicit in the oral
4 agreement. Defendant also argues that there is no legal grounds for plaintiffs' request that the judgment
5 incorporate the terms of the settlement agreement. Defendant has filed a motion to enforce the
6 settlement.

## I.  Plaintiffs' motion for entry of judgment

Plaintiffs argue that all claims have been resolved and that the Court should enter final judgment.[1] Plaintiffs propose a final judgment that is nearly two pages long. The proposed judgement contains some of the terms of the oral settlement agreement, including that the Court has retained limited jurisdiction over the case. Defendant opposes the motion, arguing that the parties agreed to execute a written settlement agreement, not recite the settlement terms in the judgment. Additionally, defendant argues that the proposed judgment contains certain statements that were not part of the settlement agreement.[2]

When the parties memorialized the settlement agreement on the record, Magistrate Judge James asked Margaret Baumgartner, who was appearing on behalf of defendant, whether she had "authority to settle these matters." TR 2:20–2:21. Ms. Baumgartner replied as follows:

> I have the authority, as you know, your honor to recommend – well, in this matter actually this – it doesn't need to go to the Board because there's no payment of funds. So, yes, we do have the authority to settle this. There does have to be a signature by the City Attorney on the settlement agreement itself, but we have the authority to agree to it.

TR 2:22–3:3. Defendant argues that this statement, along with plaintiffs' subsequent silence, evidences a clear intent to execute a written settlement agreement.

---

[1] In the alternative, plaintiffs request entry of a partial judgment that would permit them to appeal the Court's summary judgment orders.

[2] For example, it states that plaintiffs "each shall regain their right to their claims for retaliation and harassment, as set forth here, and their claims for discrimination relating to the housing policy of the Sheriff's department excluding men from working in the female jails." As for plaintiffs' understanding that they "regain" certain claims, it is unclear what plaintiffs mean; but in any event such a provision was not part of the settlement agreement.

4

There is no indication on the record that the parties intended for the Court to include in the judgment the specific relief negotiated for in the settlement agreement. *Cf. Firefighters v. Cleveland*, 478 U.S. 501, 523 (1986) ("[T]he choice of an enforcement scheme—whether to rely on contractual remedies or to have an agreement entered as a consent decree—is itself made voluntarily by the parties."). The Court finds that the parties did intend for the City Attorney to sign the settlement agreement. But the record does not indicate that the parties agreed to enter into a written settlement agreement that differed in any way from the oral settlement agreement that was memorialized on the record, and which the parties agree is binding.

Once the parties sign a written settlement agreement, it will be appropriate to enter judgment. Below, the Court orders the parties to sign such an agreement within ten days. At that time, the Court will enter judgment in this case. The judgment will not contain the terms of the settlement, with the exception that it will indicate where the Court has retained jurisdiction over certain, limited matters.[3] Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## II.  Defendant's motion to enforce settlement

Defendant has filed a motion to enforce the settlement agreement. Defendant argues that the settlement contains five particular terms that plaintiffs have objected to. First, defendant argues that the parties manifested an agreement to execute a written settlement agreement. Second, defendant argues that the plaintiffs agreed to a general release of all their claims except their employment discrimination claims. Third, defendant argues that the parties agreed to a "no fault" settlement agreement with each side bearing the attorney's fees and costs that they incurred in connection with the settled retaliation claims. Fourth, defendant argues that plaintiff is not entitled to judgment on the retaliation claims. Fifth, defendant argues that the general release binds plaintiffs' assignees.[4]

---

[3] Plaintiffs argue that final judgment should be entered that "accurately reflects the conclusion of all claims as pled in the third amended complaint." The Court agrees with that statement, but does not find that plaintiffs' proposed agreement is an accurate reflection.

[4] Defendant argues that no evidentiary hearing is required to resolve any factual issues; but that if an evidentiary hearing is held, it should be held in front of Magistrate Judge James. Finally, if the Court finds that no enforceable settlement agreement exists, defendant asks the Court to set the

5

### A. An agreement to execute a written settlement agreement

Defendant requests that the Court order the parties to execute a written settlement agreement. The Court has found that the parties did intend for the City Attorney to *sign* the settlement agreement. But the record does not indicate that the parties agreed to enter into a written settlement agreement that differed in any way from the oral settlement agreement that was memorialized on the record, and which the parties agree is binding. The parties are in possession of a written transcript of the oral settlement. If **ten days** after the issuance of this Order plaintiffs and defendants are unable to agree to a form of written settlement agreement, parties shall sign the transcript to indicate their approval of the oral settlement, with the City Attorney signing on behalf of defendant. The parties **shall immediately** file notice with the Court that they have signed the written settlement agreement so that the Court may enter judgment.

### B. The scope of the general release

Defendant asks the Court to enforce the settlement agreement by ordering that plaintiffs accept language in a proposed, written settlement agreement stating that they agree to a general release of all their claims except the jail staffing claims, and that they covenant not to sue.[5]

As explained above, the parties agree, and the Court finds, that the oral agreement is enforceable. The oral agreement includes the following statements about release of claims:

> Ms. Baumgartner: And there is one issue that I would like to clarify, which we probably should have done before we went on the record. But I'm unclear whether these three plaintiffs would remain in any way in this lawsuit, because we've been talking about the three – we've been talking about the three individual plaintiffs with respect to their retaliation causes of action.
> This is the whole other cause of action related to the sheriff's policy that is at issue in this case which we have won summary judgment on.
> Generally, when we settle with the plaintiff, of course, we do a general release and release all claims. So I'm –
>
> The Court: Why don't we go off the record for just a moment?

---

retaliation claims for trial.

[5]     Defendant also argues against plaintiffs' insistence that any written judgment or agreement include a statement that plaintiffs "regain" their retaliation claims. The Court has already determined that the judgment will not contain such a provision.

6

(Thereupon, a discussion was had off the record.)

The Court: Let's put that on the record, then. Let's go back on the record. All right. So, counsel, would you reiterate that once again?

Ms. Baumgartner: I will attempt to do so.
These three plaintiffs have an additional cause of action that the city has currently won summary judgment on related to the Sheriff's Policy, Sheriff's gender-based staffing police.
It's my understanding the plaintiffs don't intend to release their claims with respect to that specific cause of action; that we presume will go up on appeal, but that the plaintiffs will otherwise release all claims against – employment-related claims against the city to date with the exception of that particular issue.

Mr. Murray: For harassment, discrimination, et cetera. I don't know that there's anything else.

Ms. Baumgartner: Retaliation, yes. I don't know, either.

Mr. Murray: We are settling all claims, and we have, under the H – 12940H retaliation or harassment, both state and federal claims. That's all that is stated.

Ms. Baumgartner: Right. But also any potential ones out there. Again, we don't want to be resued tomorrow for some specific action they didn't raise that arose out of their employment to date. That what we would do is we would exclude from that release the one issue that is – the other cause of action in this particular case.

The Court: Known and unknown up to this point. And based on that, you're just carving out the issues on appeal.

Ms. Baumgartner: Correct.

Ms. Murray: The issue on appeal being state law claims under 12940 A for discrimination and under – I think it's 42 U.S.C. 2000E, federal claims under the Equal Employment Opportunity.

Ms. Baumgartner: As specifically they relate to the Sheriff's decision to staff female housing units with female deputies.

Mr. Murray: Only, yes.

The Court: Only, okay.

Mr. Murray: Yes.

TR 8:3–10:9.

Later in the transcript, plaintiff Janssen asked for clarification of the release provision before she agreed to the settlement:

[The Court:] So you heard the agreement that was placed on the record by counsel. Did you understand it?

7

| | |
|---|---|
| 1 | Deputy Janssen: Everything but the last part, ma'am. |
| 2 | The Court: Okay. |
| 3 | Deputy Janssen: The part of the record regarding the binding party, but he says we're okay. |

Mr. Murray: Well, no. Let me, if I can.
The lawsuit that we filed was both for the policy change that occurred in October '06 excluding men and for individual acts against you, Spired and Janssen.

Deputy Janssen: I'm Janssen; Versher.

Mr. Murray: Versher, I mean. We are now in the process of settling all the claims –

Deputy Janssen: Right.

Mr. Murray: – against you, Spires and Versher except for discrimination. So if there's anything we know of or don't know of it's settled except for –

Deputy Janssen: For the aspect.

Mr. Murray: – for the discrimination of excluding men from working in the female jails.

Deputy Janssen: Okay.

The Court: The particular discrimination. Not all others.
You are giving up everything except for that particular area that has been carved out by the summary judgment motion.

Deputy Janssen: You're talking about the retaliation, harassment issues, that part.

Mr. Murray: That's settled.

Deputy Janssen: Correct.

The Court: Is that your understanding?

Deputy Janssen: Yes.

The Court: You are giving up everything known or unknown up to this point –

Deputy Janssen: Up to this point, yes.

The Court: – except for that one narrow thing that has been carved out by the summary judgment motion. You understand that?

Deputy Janssen: Yes, ma'am, I do.

TR 11:1–12:14.

It is clear from this discussion that plaintiffs released all claims, known or unknown, against

8

defendant other than the state and federal discrimination claims regarding the Sheriff's Policy on which defendant won summary judgment, an order plaintiffs wished to appeal. To the extent that plaintiffs have released claims, they will not be able to bring suit against defendant, whether or not their release is also called a covenant not to sue.

As for the retaliation claims, the parties clearly reached a settlement that would prevent plaintiffs from re-alleging the retaliation claims contained in the Third Amended Complaint in a *future suit*. Whether or not plaintiffs also waived their statutory right to apply for attorney's fees and costs as a prevailing party is a separate question, which the Court analyzes in the next section.

The Court will not order that plaintiffs accept language about release of claims in a proposed, written settlement agreement that was not in the oral agreement.

### C.   Attorney's fees and costs

Defendant argues that the parties entered into a "no fault" settlement whereby each side would bear its own attorney's fees and costs as to the settled retaliation claims.[6] Defendant argues that this is the plain meaning of the words of the oral agreement, and that other "undisputed facts related to the settlement negotiations compel the conclusion" that defendant is not liable for attorney's fees and costs associated with the settled retaliation claims.

Plaintiffs brought their retaliation claims under Title VII and FEHA. *See* Third Am. Compl. The attorney's fees provision for Title VII cases provides that a court may award attorney's fees to a prevailing party, and for the purposes of this case it is substantially similar to 42 U.S.C. section 1988. *Compare* 42 U.S.C. § 2000e-5(k) (Title VII) ("[T]he court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee . . . . as part of the costs . . . .") *with* 42 U.S.C. § 1988 ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .).

Courts have long held that the fact that a civil rights complainant prevails through settlement rather than through litigation does not preclude her from claiming attorney's fees as "prevailing party."

---

[6] Defendant acknowledges that it agreed that plaintiffs may seek fees and costs with regard to the discrimination claims if plaintiffs ultimately prevail.

9

*See Maher v. Gagne*, 448 U.S. 122, 129 (1980) (Section 1988); *Rohrer v. Slatile Roofing & Sheet Metal Co., Inc.*, 655 F. Supp. 736 (N.D. Ind. 1987) (Title VII). Recently, the Supreme Court narrowed this rule to apply only where there is "judicial *imprimatur*" on the settlement. *See Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Human Resources*, 532 U.S. 598, 605 (2001) (emphasis original).[7] "[A]lthough there may remain some uncertainty as to what might constitute a 'judicial imprimatur,' the existence of some judicial sanction is a prerequisite in this circuit for a determination that a plaintiff is a 'prevailing party' and entitled to an award of attorneys' fees." *P.N. v. Seattle School Dist. No. 1*, 474 F.3d 1165, 1173 (9th Cir. 2007).

"[F]or a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *Id.* at 1172. In *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) (per curiam), the Ninth Circuit held that a "settlement agreement and the district court's order dismissing the case [, which] provided that the district court would retain jurisdiction to enforce the agreement," satisfied the requirements of *Buckhannon* to render the plaintiff a prevailing party. *Id.* at 844 & n. 12. In *Jankey v. Poop Deck*, 537 F.3d 1122 (9th Cir. 2008), the Ninth Circuit again upheld an award of attorney's fees where "the district court dismissed Plaintiff's case pursuant to a settlement agreement between the parties under which the court retained jurisdiction to enforce the settlement." *Id.* at 1130; *see also id.* (noting that "[t]he settlement agreement . . . both authorized judicial enforcement of its terms and expressly referred resolution of the issue of attorney fees to the district court").

Even where a plaintiff would be considered a prevailing party under the terms of a settlement

---

[7] As the Supreme Court explained,
> We have . . . characterized the *Maher* opinion as also allowing for an award of attorney's fees for private settlements. *See Farrar v. Hobby*, [506 U.S. 103,] 111 [(1992)]; *Hewitt v. Helms*, [482 U.S. 755,] 760 [(1987)]. But this dictum ignores that *Maher* only "held that fees may be assessed . . . after a case has been settled by the entry of a consent decree." *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986). Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

*Id.* at 604 n.7.

on the merits of a case, that plaintiff can negotiate a waiver of his right to attorney's fees as part of the settlement. *See Evans v. Jeff D.*, 475 U.S. 717, 731–32 (1986) (stating rule with regard to Section 1988 cases); *Gillispie v. Village of Franklin Park*, 405 F. Supp. 2d 904, 912 (N.D. Ill. 2005) (discussing *Jeff D.* and explaining that "[i]t is difficult to identify a principled basis on which to distinguish Title VII's fee award provision from those in § 1988").

The Ninth Circuit has rejected a waiver by silence rule. In *Muckleshoot Tribe v. Puget Sound Power & Light Co.*, 875 F.2d 695 (9th Cir. 1989), the Court explained that where there is not "an explicit fee waiver," waiver may be only inferred from "clear evidence that demonstrates that an ambiguous clause was intended by both parties to provide for the waiver of fees." *Id.* at 698, 699. The defendants have the burden to show that "'the settlement agreement *clearly* waived the statutory right to attorneys fees.'" *Id.* at 698 (quoting *El Club Del Barrio v. United Community Corporations*, 735 F.2d 98, 99 (3d. Cir. 1984)) (emphasis in *Muckleshoot Tribe*). Although a court will "normally determine the sufficiency of a fee release by looking to the language in the settlement agreement," a defendant may "go beyond the settlement instrument itself to prove that *both* parties intended that the agreement waive attorneys' fees." *Id.* at 698 (emphasis original); *see also Fitzgerald v. City of Los Angeles*, No. CV 03-01876 DDP (Rzx), 2009 WL 960825, * 4 (C.D. Cal. April 7, 2009).

According to the Ninth Circuit rule, first articulated in a case involving a consent decree:

> First, a waiver of attorneys' fees may be established by clear language in the release. If the decree contains an explicit reference to fees or the breadth of the release is so "sweeping" that it necessarily includes attorneys' fees, a waiver may be found. Second, if the language in the release is unclear or ambiguous, surrounding circumstances may clearly manifest the intent of the parties that attorneys' fees be waived. If, during the course of negotiations, the plaintiff rejects an explicit fee waiver provision, we are unlikely to construe ambiguous or more limited language in the settlement instrument as a waiver of fee liability. Conversely, if the defendant can provide clear evidence that demonstrates that an ambiguous clause was intended by both parties to provide for the waiver of fees, then the defendant is absolved of liability.

*Id.* (citations omitted); *see also Holland v. Roeser*, 37 F.3d 501, 503–04 (9th Cir. 1994) (applying rule in case with settlement agreement but no consent decree, and stating that "any waiver or limitation of attorney fees in settlements of § 1983 cases must be clear and unambiguous"); *Fitzgerald v. City of Los Angeles*, No. CV 03-01876 DDP (Rzx), 2009 WL 960825, * 4 (C.D. Cal. April 7, 2009) (applying the rule post-*Buckhannon*).

11

The language in the release in this case is neither so clear nor so broad that the Court can find waiver from the settlement instrument itself. Defendant points to Magistrate Judge James's statement to plaintiff Janssen that she was "giving up everything except for that particular area that has been carved out by the summary judgment motion." But Magistrate Judge James made that statement in the context of trying to explain to plaintiff Janssen what *claims* she was settling, what *claims* she was releasing, and what *claims* she could still pursue.

Nor is there clear outside evidence that demonstrates that the release language was intended by both parties to provide for the waiver of fees.

Defendant argues that by requesting a settlement conference on the retaliation claims after defendant's victory on the summary judgment motion, plaintiffs indicated that they did not want to bring the retaliation claims to trial. Defendant argues that it would have been unreasonable for it to prevail on the "centerpiece claims" of plaintiff's suit, and then agree to expose itself to liability for attorney's fees and costs in connection with peripheral retaliation claims. Defendant also points to the "gulf" separating what Plaintiffs sought and what they obtained in connection with the retaliation claims demonstrates a mutual intent to settle the question of attorney's fees. Defendant argues that the fact that plaintiffs "reached out for a settlement and accepted terms not even remotely related to their initial demands" supports the conclusion that "the parties reached a standard 'no fault' settlement" in which they agreed to bear their own costs and fees.

The Court disagrees. Although plaintiffs requested the settlement conference, defendant indicated its consent to such a conference and in fact came to a binding settlement agreement. Moreover, in settling the retaliation claims, defendant would only have exposed itself to costs and fees in relation to those retaliation claims. Assuming those claims were peripheral, then at most defendant would expose itself to costs and fees incurred litigating a peripheral claim. Finally, plaintiffs obtained concrete relief: plaintiffs will be recredited sick days used due to feelings of retaliation and harassment; defendant will remove items in plaintiffs' personnel files "related to . . . the retaliatory events"; and defendant will revise its list of places specifying where an employee can complain with regard to harassment, retaliation, and whistleblowing. If plaintiffs file a motion for attorney's fees, they will have to demonstrate that the settlement materially altered the legal relationship of the parties. Whether or not

they obtained the relief they originally requested, however, is not relevant at this time.

The conclusion that is supported by the record is that the parties simply did not negotiate either for a waiver of attorney's fees or for a right to attorney's fees. The subsequent disagreement between the parties over the terms of the settlement agreement—which were expressed to the Court only six days after the memorialization and the same day that the Court had entered an order dismissing the case upon settlement—further supports such a finding.[8] Under the default rule in *Muckleshoot Tribe*, the enforceable settlement agreement in this case does not contain an explicit or implicit waiver. The Court will not order plaintiffs to accept a waiver in written settlement agreement, or otherwise enforce a waiver.

### D. Entitlement to judgment

Defendant argues that the settlement agreement does not entitle plaintiffs to judgment entered in their favor on the retaliation claims. Defendant is correct, and plaintiffs do not appear to argue otherwise. When judgment is entered on the retaliation claims, it will not be entered in plaintiffs' favor. But the Court will not order the parties to include this as a term in any written settlement agreement.

### E. The binding nature of the general release

Defendant argues that the release that plaintiffs agreed to is binding not only on them, but also their assignees. The only indication that plaintiffs disagree with this is that they struck a provision in a proposed written memorialization of their settlement agreement that provided for such a release. The Court agrees with defendant that where plaintiffs have released claims, they may not assign those claims to another. Again, however, the Court will not order the parties to include this as a term in any written settlement agreement.

---

[8] This is not a case like *Muckleshoot Tribe* where, during the course of negotiations, the plaintiff rejected an explicit fee waiver provision. That was very strong evidence that the plaintiff did not intend to waive its statutory right to attorney's fees. But the timing of plaintiffs' objections in this case is some evidence that the parties simply did not negotiate the attorney's fees question.

13

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion for entry of judgment. (Doc. 309.) The Court GRANTS IN PART and DENIES IN PART defendant's motion to enforce settlement. (Doc. 311.)

The parties are in possession of a written transcript of the oral settlement. If **ten days** after the issuance of this Order plaintiffs and defendants are unable to agree to a form of written settlement, then parties SHALL sign the transcript to indicate their approval of the oral settlement, with the City Attorney signing on behalf of defendant. The parties **SHALL IMMEDIATELY** file notice with the Court that they have signed the written settlement agreement so that the Court may enter judgment. At that time, the Court will enter judgment in this case. The judgment will not contain the terms of the settlement, with the exception that it will indicate where the Court has retained jurisdiction.

**IT IS SO ORDERED.**

Dated:  May 27, 2011

*Susan Illston*
SUSAN ILLSTON
United States District Judge