IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCY AMBAT, *et al.* | No. C 07-03622 SI |
| Plaintiffs, | **ORDER GRANTING MOTION FOR ATTORNEY'S FEES** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | |

On September 2, 2011, the Court heard argument on plaintiffs' motion for attorney's fees. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS the motion and awards plaintiffs $8,925.

**BACKGROUND**

These consolidated cases involved challenges by approximately thirty sheriff's deputies to a gender-based staffing policy of the San Francisco Sheriff's Department. In mid-2006, the Sheriff reorganized inmate housing in the San Francisco jails such that all female inmates were placed in County Jail #8 in female-only housing units, or "pods." Thereafter, in October 2006, the Sheriff implemented a policy requiring that only female deputies be assigned to staff these female pods. Plaintiffs in this case were both male and female sheriff's deputies who alleged that the Sheriff's staffing policy ("the Policy") amounts to employment discrimination. Additionally, several of the plaintiffs brought retaliation claims against defendant. The Court granted defendant summary judgment on almost all of plaintiffs' claims.

The Court denied defendant's motion for summary judgment on retaliation claims brought by

three plaintiffs: Lisa Janssen, Mattie Spires-Morgan, and Anjie Versher ("plaintiffs"). Plaintiffs contended that defendant retaliated against them by reprimanding them for complaining that the Policy constituted gender discrimination and for participating in this lawsuit. They pointed to written reprimands, negative performance evaluations, "written counseling," and other conduct that they argued was retaliatory.

A day after the Court denied defendant's motion for summary judgment on plaintiffs' retaliation claims, and approximately three weeks before trial was scheduled to begin, the parties agreed to continue the trial date in order to enter into settlement negotiations on the remaining claims. A settlement conference was held with Chief Magistrate Judge Maria-Elena James on June 8 and June 10, 2010, and everyone agreed that the parties had settled the case. The agreement was read into the record. The Court entered an order dismissing the case with prejudice upon settlement. Doc. 292.

Almost immediately it became clear that the parties disagreed about how the settlement should be memorialized. Plaintiffs objected to the dismissal, requesting instead that judgment be entered incorporating the terms of the settlement. Doc. 293. Defendant objected the form of judgment proposed by plaintiffs, explaining its belief that there should be a separate, written settlement agreement, and then a simple judgment entered that stated that the retaliation claims had been dismissed. The Court referred this disagreement back to Magistrate Judge James, and the parties were unable to come to a resolution.

On May 27, 2011, the Court heard argument in competing motions filed by the parties: a motion for entry of judgment filed by plaintiffs, and a motion to enforce the settlement agreement filed by defendant. The parties agreed that they reached a settlement agreement on plaintiffs' retaliation claims, and that the settlement agreement was memorialized on the record before Magistrate Judge James on June 10, 2010. They disagreed over the terms of the settlement, and the procedure by which it should be reduced to writing.[1]

The Court granted each motion in part and denied each motion in part. Doc. 315. The Court found that the parties had a clear intent to execute a written settlement agreement. The Court granted plaintiffs' request that it enter judgment, but only after the parties signed a written settlement agreement.

---

[1] The parties agreed that plaintiffs retained the right to appeal the summary judgment order on their gender discrimination claims, which plaintiffs have now done.

2

The Court denied plaintiffs' request to include the remaining terms of the settlement agreement in the Judgment, with the exception that the Judgement would indicate where Magistrate Judge James retained jurisdiction over certain, limited matters. The Court granted defendant's requests that the parties be ordered to execute a written settlement agreement, with the caveat that if the parties could not agree to the form of the agreement within ten days, they would be required to sign a copy of the transcript to indicate their approval of the oral settlement.

The Court declined to order that the parties include in a written agreement any terms that were not agreed to on the record before Magistrate Judge James. For example, defendant had requested that the Court find that the parties entered into a "no fault" settlement agreement whereby each side would bear its own attorney's fees and costs as to the settled retaliation claims. The Court declined to do so, explaining that the language in the release contained in the oral settlement agreement was neither so clear nor so broad that the Court could find that plaintiffs waived their right to move for attorney's fees, and that there was not sufficient outside evidence to support such a finding. The Court reserved the question of whether plaintiffs were the prevailing party on the retaliation claims, as it was not squarely presented in the motions.

Plaintiffs have now filed a motion for attorney's fees, in which they request $127,447.26.

**LEGAL STANDARD**

**I. Awarding attorney's fees**

The attorney's fees provision for Title VII cases provides that a court may award attorney's fees to a prevailing party, and for the purposes of this case it is substantially similar to 42 U.S.C. section 1988. *Compare* 42 U.S.C. § 2000e-5(k) (Title VII) ("[T]he court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee . . . . as part of the costs . . . .") *with* 42 U.S.C. § 1988 ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .).

Courts have long held that the fact that a civil rights complainant prevails through settlement rather than through litigation does not preclude her from claiming attorney's fees as "prevailing party." *See Maher v. Gagne*, 448 U.S. 122, 129 (1980) (Section 1988); *Rohrer v. Slatile Roofing & Sheet Metal*

3

*Co., Inc.*, 655 F. Supp. 736 (N.D. Ind. 1987) (Title VII). Recently, the Supreme Court narrowed this rule to apply only where there is "judicial imprimatur" on the settlement. *See Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Human Resources*, 532 U.S. 598, 605 (2001) (emphasis original).[2] "[A]lthough there may remain some uncertainty as to what might constitute a 'judicial imprimatur,' the existence of some judicial sanction is a prerequisite in this circuit for a determination that a plaintiff is a 'prevailing party' and entitled to an award of attorneys' fees." *P.N. v. Seattle School Dist. No. 1*, 474 F.3d 1165, 1173 (9th Cir. 2007).

"[F]or a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *Id.* at 1172. In *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) (per curiam), the Ninth Circuit held that a "settlement agreement and the district court's order dismissing the case [, which] provided that the district court would retain jurisdiction to enforce the agreement," satisfied the requirements of *Buckhannon* to render the plaintiff a prevailing party. *Id.* at 844 & n. 12. In *Jankey v. Poop Deck*, 537 F.3d 1122 (9th Cir. 2008), the Ninth Circuit again upheld an award of attorney's fees where "the district court dismissed Plaintiff's case pursuant to a settlement agreement between the parties under which the court retained jurisdiction to enforce the settlement." *Id.* at 1130; *see also id.* (noting that "[t]he settlement agreement . . . both authorized judicial enforcement of its terms and expressly referred resolution of the issue of attorney fees to the district court").

---

[2] As the Supreme Court explained,
> We have . . . characterized the *Maher* opinion as also allowing for an award of attorney's fees for private settlements. *See Farrar v. Hobby*, [506 U.S. 103,] 111 [(1992)]; *Hewitt v. Helms*, [482 U.S. 755,] 760 [(1987)]. But this dictum ignores that *Maher* only "held that fees may be assessed . . . after a case has been settled by the entry of a consent decree." *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986). Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

*Id.* at 604 n.7.

4

**II.     Calculating attorney's fees**

A district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested. *Id.* at 433.

In addition, a district court must answer two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434. Regarding the first question, the Ninth Circuit has explained that

> [a] plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful . . . claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize congressional intent to limit awards to prevailing parties. However, in a lawsuit where the plaintiff presents different claims for relief that involve a common core of facts or are based on related legal theories, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. Instead, the court must proceed to the second part of the analysis and focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (internal quotation marks and citations omitted).

"[W]hen the plaintiff has prevailed on some, but not all his claims . . . '[t]he district court must reduce the attorneys fee award so that it is commensurate with the extent of the plaintiff's success.'" *Id.* at 1104 (quoting *McGinnis v. Ky. Fried Chicken*, 51 F.3d 805, 808, 810 (9th Cir. 1994)). Although "a pro rata distribution of fees to claims 'makes no practical sense,'" a district court should nonetheless "'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown*, 565 F.3d at 1104 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also id.* at 1103 n. 3 ("The Court in Hensley also noted, in dicta, that 'had respondents prevailed on only one of their six general claims, [rather than five of the six,] ... a fee award based on the claimed hours clearly would have been excessive.'" (quoting 461 U.S. at 436) (alteration and omission in *McCown*)).

5

## DISCUSSION

I. **Awarding attorney's fees**

The parties disagree as to whether the Court can award plaintiffs attorney's fees in this case.

As part of the settlement, the parties agreed to the following terms:

> **Ms. Baumgartner [on behalf of defendant]**: The City has agreed that it will remove up to 10 days of -- or recredit Deputy Spires-Morgan up to 10 days of sick leave to the extent that that sick leave is used due to her feelings of retaliation and harassment arising out of the remaining events that are at issue in this case, which are defined in the court's summary judgment order.
> And that the City will recredit Deputy Janssen up to five days for the same purpose.
>
> If the parties can't agree on which days those would be and whether they were, in fact, associated with these particular events, we will return to the court for further instruction on that issue.
>
> **Mr. Murray [on behalf of plaintiffs]**: If I might interject. I believe we have agreed that there would -- if we would return to the court for a ruling by the court on what, if any, of those claims would be recredited, and it would be subject to no further appeal, no further discussion.
> Her honor would make the decision, and that's it.
>
> **Ms. Baumgartner**: Right. But just to clarify, it's not further claims, but further sick leave days.
>
> **Mr. Murray**: Right.
>
> **Ms. Baumgartner**: Right, okay.
>
> **The Court**: So then, you're consenting to me hearing that issue; is that correct?
>
> **Ms. Baumgartner**: Correct, your honor.
>
> **Mr. Murray**: Without appeal, without further notice, without further filings or pleadings.
>
> **The Court**: All right. So I'll retain jurisdiction over that issue.
>
> **Mr. Murray**: Correct.
>
> **Ms. Baumgartner**: Correct.

[. . .]

> **Ms. Baumgartner**: The City will also work with the plaintiffs to determine which pieces of paper exist in their personnel files related to the events, the retaliatory events that are at issue, remaining at issue, and to remove those from the personnel files, to place them under seal and to agree not to use them in the future for any decisions related to promotion, transfer or discipline.
> Again, to the extent that the parties can't agree about which pieces of paper in the personnel file fall within this definition, the court will retain jurisdiction, and we will submit to the court's ruling with respect to any specific piece of paper which should or

6

should not be included.

**The Court**: That's right, after meeting and conferring on it.

**Mr. Murray**: And the court will then make a final decision on that that would be binding, and no appeal would be taken so we don't continue on, and there's no further pleading. Call the court and say:
> "We need to come talk to you."

We don't have to file pleadings and responses and et cetera.

**The Court**: That's fine.

**Ms. Baumgartner**: Okay.

Decl. of Rafal Ofierski in Supp. of CCSF Mot. to Enforce Settlement (Doc. 312), Ex. A, at TR 3:16–4:22; 6:24–7:21.

The Judgment in this case states the following:

> The retaliation claims of plaintiffs Spires-Morgan, Janssen and Versher have been settled. Judge James retains jurisdiction, in accordance with the terms of the settlement agreement, and without further court filings, to resolve any disagreement between the parties with regard to which days of sick leave are to be recredited to plaintiffs Spires-Morgan and Janssen, and which papers are to be removed from the personnel files of plaintiffs Spires-Morgan, Janssen, and Versher. Any determination on those matters is not subject to appeal.

Doc. 319.

Plaintiffs in this case have achieved a material alteration of the legal relationship of the parties, and that alteration was judicially sanctioned. Plaintiffs obtained more than what defendants call "a hypothetical and minute gain" and "de minimis or 'technical' success." *See* Def. Oppo. at 7, 12. Plaintiffs are entitled to attorney's fees under Title VII for litigating their retaliation claims.

## II. Calculating attorney's fees

### A. Claims

Defendant argues that plaintiff can only be awarded attorneys fees for time spent litigating the retaliation claims:

> The claims regarding the Policy were gender-discrimination claims involving the application of the specialized [Bona Fide Occupational Qualifications] affirmative defense, and the underlying facts involved matters such as various aspects of jail operations, jail structure, working conditions, safety of inmates and jail staff, incidents of improper relationships between inmates and staff, and inmate privacy concerns. The retaliation claims, on the other hand, required the application of the entirely distinct *McDonnell Douglas* analysis, and the underlying factual allegations concerned alleged reprisals

7

1 against Janssen, Spires-Morgan and Versher by several supervisors.

2 Def. Oppo. at 11.

3 The Court agrees. Plaintiffs are not eligible to receive attorney's fees for time devoted to
4 litigating the gender discrimination claims.

### B. Hourly Rate

Plaintiffs' lead attorney requests an award of fees of $450 per hour of work. Defendant argues that this is grossly excessive, citing an hourly rate awarded in a 2006 case, and requesting that the Court award the same rate here. In *Levine v. City of Alameda*, 2006 WL 1867532 (N.D. Cal. July 5, 2006), the court found that $325 was a reasonable rate for that particular plaintiff's attorney, because it was in the middle of the range of what that particular plaintiff's attorney charged. Not only have more than five years passed since the award in *Levine*, but plaintiffs' lead attorney here presents different evidence to the Court. The Court finds that $450 is a reasonable hourly rate for plaintiffs' lead attorney to have charged in this case.

Defendants do not challenge any of the other rates plaintiffs propose, and the Court finds that those rates are reasonable as well.

### C. Hours

Plaintiffs have requested $127,447.26 in fees. They request $59,884.25 for 159.52 hours of what they call "specific" work, "for time specifically related to plaintiffs Spires-Morgan, Janssen and Versher." Decl. of Lawrence Murray in Supp. of Pl. Mot. for Attorney's Fees ("Murray Decl.") (Doc. 321-2) ¶¶ 32, 33, 35. They request $63,130.48 for 3/35 of the hours devoted to what they call "apportioned" work, which is for time spent litigating claims of all 35 plaintiffs. *Id.* They request $4,432.53 for 2% of 759.74 hours of "general" work—all other time spent litigating this case. *Id.* And they request $10,374.87 for non-attorney work on those three categories of cases.

This case was primarily about gender discrimination. No plaintiff prevailed on a discrimination claim. The Court will not order defendant to pay attorney's fees for work related in whole or in large part to the discrimination claims, unless and until plaintiffs win their appeal and prevail on those claims.

8

Thus, the Court will not award plaintiffs fees for the "apportioned" work or "general" work, which by plaintiffs' definitions relate to the gender discrimination claims.

Plaintiffs did not present any time sheets along with their motion, but rather a declaration as to the total number of hours that each lawyer and staff member dedicated to each of the above categories of work. Before the hearing on this motion, the Court ordered plaintiffs to submit a "sworn declaration, accompanied by contemporaneous time records, as to the attorney and paralegal time spent performing tasks that related solely to the retaliation claims of plaintiffs Janssen, Spires-Morgan, and Versher," explaining that "[t]he declaration and records should reflect how much time was spent, when, by whom and doing what, and should be limited to work related only to the Janssen, Spires-Morgan, and Versher retaliation claims." Order re: Motion for Attorney's Fees (Doc. 344).

Plaintiffs did not provide any documentation of non-attorney time in response to this order, and the Court will not award fees for the work performed by non-attorneys in this case. Plaintiffs have explained what work non-attorney staff members have experience doing, but they provide no explanation of what tasks the non-attorney staff members actually performed in relation to this case. *See* Murray Decl. at ¶¶ 40–45. Plaintiffs have not carried their burden to show that the non-attorney time is anything but overhead, and the Court denies the request.[3]

Plaintiffs did provide a copy of the time sheets for the "specific" work performed by the attorneys in this case in response to the Court's order.[4] The Court has reviewed the time sheets and finds that a large portion of the "specific" work related in whole or in large part to the discrimination claims. As discussed above, the Court will not award fees for the performance of this work. Thus, for example, the Court will not award attorney's fees for time spent on general client meetings, preparing declarations, preparing for and attending depositions, preparing the EEOC complaint, discussing discrimination-specific defenses with plaintiffs, or discussing discrimination-specific case law with

---

[3] Moreover, a significant majority of the non-attorney hours were devoted to "apportioned" or "general" work and the requested fees would not be recoverable even if properly documented and supported.

[4] Plaintiffs provided the time sheets directly to the Court for in camera review. If either party wishes to appeal this order, plaintiffs will be required to place their time sheets on the record, appropriately redacted to remove privileged information while still permitting defendant to understand what time entries correspond to what tasks.

9

plaintiffs.[5] Three pairs of entries are for the same work done on the same day for the same amount of time, and the Court finds these to be duplications.[6] A large number of time entries are for retaliation-specific work, and the Court will grant fees for attorney time thus spent.[7]

The Court awards $8,925 in attorney's fees, an amount commensurate with the extent of the plaintiffs' success.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for attorney's fees and awards $8,925 in attorney's fees. (Doc. 321.)

**IT IS SO ORDERED.**

Dated: September 2 , 2011

SUSAN ILLSTON
United States District Judge

---

[5] Thus, the Court will not award fees for time entries 40773, 35471, 36300, 36338, 36339, 36719, 38034, 40767, 40769, 34454, 40818, 43241, 48807, 29599, 29659, 29667, 29672, 29685, 29716, 29806, 30947, 30999, 33207, 31019, 31022, 31056, 31059, 31274, 31341, 31655, 40709, 29612, 37590, 37593, 37597, 37964, 37966, 37967, 37968, 33172, and 33403, which are all relate in large part to the discrimination claims in this suit. Nor will the Court award fees for time entries 29301, 29303, 30948, 31057, 31058, and 32309 which all relate exclusively to the discrimination claims in this suit.

[6] Entry 48537 is duplicative of entry 48536; entry 48539 is duplicative of entry 48538; and entry 48544 is duplicative of entry 48543.

[7] Thus, the Court awards fees for time entries 35453, 35455, 35558, 35636, 35853, 36668, 41545, 48516, 48536, 48538, 48540, 48541, 48542, 48543, 48545, 31018, 29707, 29757, 30501, 31061, 31699, 32760, 32892, and 32950.