UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCY AMBAT, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant. | Case No. 07-cv-03622-SI<br><br>**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is plaintiffs' renewed motion for summary judgment, scheduled for hearing on December 5, 2014. Docket No. 379. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons stated below, the Court **DENIES** plaintiffs' motion for summary judgment.

**BACKGROUND**

These consolidated cases involve challenges by approximately thirty-five sheriff's deputies to a gender-based staffing policy of the San Francisco Sheriff's Department. In mid-2006, the Sheriff reorganized inmate housing in the San Francisco jails such that all female inmates were placed in County Jail #8 in female-only housing units, or "pods." Thereafter, in October 2006, the Sheriff implemented a policy requiring that only female deputies be assigned to staff these female pods. Plaintiffs in this case are both male and female sheriff's deputies who allege that the Sheriff's staffing policy ("the Policy") amounts to employment discrimination. In their Third Amended Complaint ("TAC"), plaintiffs assert nine causes of action, which included various gender discrimination and retaliation claims under Title VII and California's Fair Employment and

Housing Act ("FEHA").

In particular, plaintiffs assert that the Policy constitutes gender discrimination under state and federal law. First, plaintiffs allege that they have suffered injury as a result of a change in the shift-bid system. According to plaintiffs, when the Policy was implemented, the Sheriff's Department began making assignments for shifts and days off according to gender rather than seniority. TAC ¶ 39. Both the male and female plaintiffs allege that they have received less favorable assignments than they would have under the seniority-based system. The male plaintiffs further allege that they have lost overtime shifts in the female pods to female deputies with less seniority, that they have lost promotional opportunities as a result of a lack of opportunity to supervise female inmates, and that they are forced to "trade" to shifts in unfamiliar facilities when a female deputy in one of those facilities is needed to staff a shift in a female pod. *Id.* ¶¶ 37-41, 108.

Second, the female plaintiffs separately allege that they are placed at increased stress and risk of harm as a result of the Policy. According to plaintiffs, this is because female inmates are not segregated by security level, history of violence, or mental health status, because lights are not kept on 24 hours a day as they are in male housing units, and because the female pods are overcrowded and understaffed, with only one female deputy on duty at certain times. TAC ¶ 25-28, 31. The female plaintiffs further allege that they lack adequate training in the security procedures needed to deal with the female inmate population, and that the female pods lack infrastructure for security enforcement, such as leg and body chains to be used in transporting dangerous inmates. *Id.* ¶¶ 30, 32.

On February 17, 2010, this Court ruled on the parties' cross motions for summary judgment, finding that defendant had adequately demonstrated that its gender-based policies were covered by the bona fide occupational qualification ("BFOQ") exception, and were thus not actionable discrimination. The Court also granted defendant's motion for summary judgment as to most of the retaliation claims. On August 25, 2010, the Court denied plaintiff's motion for

2

reconsideration.

On, July 2, 2014, the Ninth Circuit affirmed the Court's grant of summary judgment on the retaliation claims, but reversed as to the Court's grant of summary judgment on the BFOQ issue. In so holding, the Court of Appeals noted that there were triable issues of fact regarding whether: (1) the Policy was the "product of a reasoned decision-making process, based on available information and experience" and was thus entitled to "some deference," (2) the "Sheriff had a substantial basis for believing that all or nearly all male deputies were likely to engage in sexual misconduct with female inmates, [or whether] it is impossible or highly impractical to insure by individual testing that a male deputy does not pose such a threat," (3) "privacy screens actually do compromise jail security," and (4) "excluding male deputies is a legitimate proxy for excluding deputies who would interfere with female inmates' rehabilitation." *Ambat v. City & Cnty. of San Francisco*, 757 F.3d 1017, 1026, 1028, 1030 (9th Cir. 2014) (internal citations omitted).

Now before the Court, is plaintiffs' renewed motion for summary judgment. Docket No. 379.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to

"set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

### I. Statutory Framework

Title VII and FEHA make it unlawful for an employer to discriminate on the basis of sex with respect to an employee's compensation or in the terms, conditions, or privileges of employment, or to "limit, segregate, or classify" on the basis of sex in any way that deprives employees of employment opportunities or adversely affects their employment status. 42 U.S.C. § 2000e-2(a)(1) & (2); Cal. Gov. Code § 12940(a). Where, as here, an employer's policy differentiates between male and female employees on its face, the employer bears the burden of demonstrating a defense to liability. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir.

4

2000).

A statutory defense to liability under both Title VII and FEHA exists when sex is a BFOQ that is "reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e); Cal. Gov. Code § 12940.[1] The BFOQ defense is available only under limited circumstances. First, the employer must show that the "essence" or "central mission" of its business would be undermined if the employer did not impose the qualification. *Int'l Union, United Automobile, Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls*, 499 U.S. 187, 202-03 (1991); *Dothard v. Rawlinson*, 433 U.S. 321, 333 (1977). In the correctional context, the "essence" of the business includes "the security of the prison, the safety of inmates, and the protection of the privacy rights of inmates." *Everson*, 391 F.3d at 753. Second, the employer must demonstrate that that "[sex] is a legitimate proxy for the qualification because (a) it has a substantial basis for believing that all or nearly all [men] lack the qualification, or ... (b) it is impossible or highly impractical ... to insure by individual testing that its employees will have the necessary qualifications for the job." *Ambat*, 757 F.3d at 1025, *quoting Breiner v. Nevada Dep't of Corr.*, 610 F.3d 1202, 1210 (9th Cir. 2010).

In determining whether a correctional institution has properly availed itself of the BFOQ defense, the Court must give "some deference" to the judgments of prison officials only if they are the result of "a reasoned decision-making process, based on available information and experience." *Breiner,* 610 F.3d at 1214, *citing Robino v. Iranon,* 145 F.3d 1109, 1110 (9th Cir. 1998).

---

[1] The same analysis applies to both Title VII and FEHA claims. "Because California law under the FEHA mirrors federal law under Title VII, federal cases are instructive." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir. 1998).

## II. BFOQ

Plaintiffs' motion largely reiterates arguments that it previously made to this Court when the parties filed cross-motions for summary judgment in 2010. Plaintiffs' new theories primarily concern their interpretation of the Ninth Circuit's reversal of this Court's grant of summary judgment on the BFOQ issue. Throughout their motion, plaintiffs assert that the Ninth Circuit's opinion in this case forecloses defendant's ability to make out a BFOQ defense. Plaintiffs proclaim that "[u]nder the Ninth Circuit opinion, the defense of the case should end here," Docket No. 385, Pl. Mot. at 11, "[w]ith this Ninth Circuit opinion, [the BFOQ] defense is no longer viable," *Id.*, "[h]aving the Ninth Circuit opinion,…they can not make a case for BFOQ," *Id.* at 20, "the Ninth Circuit opinion, when reviewing the same evidence that [defendant] presents now, word for word, ruled that it was not enough for a BFOQ defense." Docket No. 388, Pl. Rep. at 2. These are but a few examples of what amounts to a mischaracterization of the Court of Appeals' holding.

The Ninth Circuit did not hold that defendant could not, as a matter of law, prevail on a BFOQ defense; to the contrary, it only held that factual disputes precluded it from prevailing at the summary judgment stage. *Ambat*, 757 F.3d 1017 at 1031 ("While we do not reach the issue of whether the County could ultimately prevail on plaintiffs' discrimination claims, the factual disputes in this case prevent the County from prevailing at this stage."). As noted above, the Court of Appeals held that there were genuine disputes of fact regarding key issues pertaining to the BFOQ defense. Among them, was whether the Policy is entitled to "some deference," and whether gender is a "legitimate proxy" for the employment qualification at issue. Given that (1) a finding that the Policy is a BFOQ would be a complete defense to plaintiffs' discrimination claims, and (2) the Ninth Circuit has held that there are triable issues of fact as to certain elements of that defense, plaintiffs are not entitled to summary judgment as to their discrimination claims. This conclusion is also bolstered by this Court's independent review of the factual record, which evidences material disputes regarding elements of the BFOQ defense.

### A. Deference

The Court must accord some deference to a correctional officer's policy judgment if it is the product of a "reasoned decision-making process, based on available information and experience." *Breiner,* 610 F.3d at 1214. The Ninth Circuit held in this case that "the record before us now clearly exhibits a genuine dispute over whether the Policy resulted from a 'reasoned decision-making process, based on available information and experience.'"*Ambat v. City & Cnty. of San Francisco*, 757 F.3d 1017, 1027 (9th Cir. 2014) (internal citations omitted). Therefore, this issue is not suitable for summary judgment.

### B. Sex as a Legitimate Proxy

In order to prevail on a BFOQ defense, an employer must show "[sex] is a legitimate proxy for the qualification because (a) it has a substantial basis for believing that all or nearly all [men] lack the qualification, or ... (b) it is impossible or highly impractical ... to insure by individual testing that its employees will have the necessary qualifications for the job." *Id.* at 1025 (internal citations omitted). In this case, the Ninth Circuit held that there were genuine issues of fact as to both of these prongs:

> The record before us does not resolve the genuine dispute over whether the tests that are presently used or that could be used by SFSD would permit it to make a practical reliable differentiation between those who are likely to engage in sexual misconduct and those who are not…[T]he record on summary judgment is insufficient to demonstrate that there is no genuine dispute as to whether "all or substantially all" male deputies would be vulnerable to manipulation by female inmates or as to whether it would be "impossible or highly impractical" to test for whether a male deputy is manipulable…[T]here is a genuine dispute over whether excluding male deputies is a legitimate proxy for excluding deputies who would interfere with female inmates' rehabilitation.

*Id.* at 1029-30.

As such, the issue of whether sex is a legitimate proxy for reasonably necessary job qualifications is not suitable for summary judgment.

7

## II. De Minimis Harm

In the parties' cross-motions for summary judgment in February of 2010, defendants argued that they were entitled to summary judgment because the Policy was a BFOQ, and in the alternative, because plaintiffs had sustained only de minimis harm. The Court granted defendant's motion on the basis of the BFOQ defense, and therefore did not consider the issue of de minimis harm; likewise the Ninth Circuit did not consider it on appeal. Plaintiffs now move for summary judgment on the issue of whether the harm sustained by the deputies was more than de minimis.

*Robino,* 145 F.3d, concerned a prison policy which precluded male guards from working at six posts (out of a total of forty-one) in a women's prison. These posts allowed the guard on duty to view the inmates while they were showering. The policy was instituted to protect the inmates' privacy, and to reduce the risk of sexual misconduct. The Court concluded that a policy that only affected six out of forty-one positions, resulted in only a "de minimis" harm to male guards and therefore fell outside the contours of actionable discrimination. *Id.* at 1110. *Breiner* further elaborated on this holding, noting that "the restriction in *Robino* was 'de minimis' not…because a small proportion of positions were affected, but because 'male [guards had] not suffered any tangible job detriment beyond a reduced ability to select their preferred watches.'… *Robino*'s premise, then, was necessarily that a minor impact on job assignments was too minimal to be actionable." *Breiner,* 610 F.3d at 1209. *Breiner* therefore holds that in order to prove that the harm suffered was more than de minimis, plaintiffs must focus on the discriminatory policy's effect on employment opportunities, and not on the proportion of employees affected by the policy. Of course, these concepts are interrelated. A policy which affects a high proportion of available shifts is more likely to have a significant impact on job assignments. Nevertheless, the inquiry requires a focus on the nature of the harm sustained, rather than the number or proportion of employees harmed. After all, "the aim of Title VII is to protect individuals, not groups." *Connecticut v. Teal*, 457 U.S. 440, 458 (1982); *see also Latta v. Otter,* No. 12-17668, 2014 WL 4977682, at *19 (9th Cir. Oct. 7, 2014) ("This focus in modern sex discrimination law on the preservation of the ability freely to make individual life choices regardless of one's sex confirms that sex discrimination

8

1  operates at, and must be justified at, the level of individuals, not at the broad class level of all men
2  and women.").

3   Plaintiffs assert that the Policy has adverse employment consequences for both male and
4  female deputies. For example, plaintiffs assert that the Policy forces female deputies to take on
5  unwanted overtime (sometimes resulting in 16 hour work-days), Docket No. 385-1, Pl. UMF ¶ 15,
6  impedes their ability to gain experience in other types of posts (such as transport and control
7  room) which in turn impedes their ability to respond to oral review questions, Pl. UMF ¶ 17-18,
8  exposes them to higher levels of danger because the female pods lack similar safety equipment as
9  in the male section of the jail and because, unlike male prisoners, female inmates are permitted to
10 have access to items such as scissors, curling irons, and microwaves. Pl. UMF ¶¶ 21-22. Plaintiffs
11 also assert that the Policy inhibits male deputies' ability to earn overtime by working in the female
12 housing units, in contravention of the existing seniority system. Pl. UMF ¶ 28.

13  Defendants contend that plaintiffs' assertions are unsupported by the record, and submit
14 evidence purporting to show that plaintiffs have suffered nothing more than de minimis harm. For
15 example, defendants point out that many of the male plaintiffs have earned more overtime after the
16 implementation of the Policy. Docket 218 ¶ 28. They also argue that while female inmates have
17 access to curling irons and other dangerous items, male inmates are 1.5 times more likely to be
18 involved in a violent incident, *Id.* ¶ 22, and that safety equipment is provided for in both male and
19 female jails. Docket No. 191, Def. UMF ¶ 64. Defendants also point to evidence showing that
20 female deputies regularly work shifts outside of the housing units. Def. UMF ¶¶ 53-55.

21  The parties have introduced conflicting evidence on the issue of whether plaintiffs
22 sustained more than de minimis harm as a result of the implementation of the Policy. Plaintiffs
23 argue that the Policy has "gone on since October 2006, with no end in site [*sic*]. It would be
24 ludicrous to claim not one person has suffered any loss or harm by this polity [*sic*]." Pl. Rep. at 2.
25 However on a motion for summary judgment, "all reasonable inferences that may be drawn from
26 the facts placed before the court must be drawn in the light most favorable to" the nonmoving
27 party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (internal quotations

omitted).The Court therefore finds that there is a triable issue of fact, and that summary judgment is not warranted on the question of de minimis harm.

### IV. Parties to the Case

In its opposition brief, defendant remarks that there is some uncertainty surrounding the identity of the plaintiffs in this case, as some have failed to appeal the Court's summary judgment ruling in 2010. Defendant urges the Court to require plaintiff's counsel to disclose precisely which plaintiffs remain in the case, arguing that those who failed to appeal lack standing. Docket No. 387, Def. Opp'n at 5. At oral argument before the Ninth Circuit, counsel for plaintiffs remarked that the case began with thirty-five plaintiffs, but is now down to "about twenty-two." In 2009, the Court twice ordered plaintiffs' counsel to disclose to defendant which former plaintiffs he continues to represent. Docket No. 155. It appears that plaintiffs' counsel never complied with these orders.

The Court finds that an opposition brief is not the appropriate vehicle to raise these concerns. If defendant wishes to compel disclosure of certain facts or contest certain plaintiffs' standing, then they may do so in a separate motion.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is DENIED. This resolves Docket No. 379.

**IT IS SO ORDERED**.

Dated: December 2, 2014

SUSAN ILLSTON
United States District Judge